12964

## GENERAL MOTORS ACCEPTANCE CORPORATION v. CHESTNUT, SHERIFF, *ET AL.*

(155 S. E., 231)

December, 1929.

*Messrs. W. K. Suggs, Frank G. Tompkins* and *Frank B. Gary, Jr.,* for appellant,

*Messrs. Sherwood & McMillan,* for respondent,

August 15, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

While H. P. Anderson, in violation of law, was transporting about 40 gallons of alcoholic liquors in a Buick automobile, in Horry County, the respondents, Sheriff Chestnut and Peace Officer Allen, of that county, arrested Anderson, seized the automobile and proceeded to confiscate it, under the authority of Section 885 of the Criminal Code of 1922. Thereafter, the appellant brought claim and de-

livery suit to recover the automobile, on the ground that it held a valid, unpaid chattel mortgage, executed by Anderson to D. Y. Rivenbark, which had been assigned to the appellant before the maturity of the paper; the appellant claiming that it was entirely innocent of any consent or knowledge of the illegal use of the automobile by Anderson. By his answer, Sheriff Chestnut admitted the seizure of the automobile, and alleged the illegal use thereof by Anderson in the transportation of whisky, with the knowledge of the appellant and its agents of that use.

The trial of the case before Circuit Judge Townsend and a jury, in the Court of Common Pleas for Horry County, resulted in a verdict and judgment in favor of Sheriff Chestnut. The appellant has asked us to review the case on the exceptions hereafter mentioned.

In a cause of this kind, the test of the right of a mortgagee, under Section 885 of the Criminal Code 1922, to recover, or not to recover, the property covered by his mortgage, is the mortgagee's guilt or innocence in the use of the vehicle or automobile for the unlawful purpose of transporting alcoholic liquors. *Ward v. Greer*, 155 S. C., 426, 152 S. E., 678; *Manufacturers' Finance Acceptance Corporation v. Bramlett*, 157 S. C., 419, 154 S. E., 410.

The appellant is a corporation. It can only act and speak by and through its agents, officers, servants and employees. If any authorized agent, officer, employee or servant of the appellant consented to the use of the automobile by Anderson in the illegal transportation of alcoholic liquors, or had knowledge of such illegal use by Anderson, the automobile was subject to confiscation, even if the appellant did hold an unpaid chattel mortgage thereon. Section 885, Vol. 2, Criminal Code 1922; *Ward v. Greer, supra; Manufacturers, Etc., v. Bramlett, supra.*

There is no need to cite authority for three other legal propositions: (1) The principal is bound by the acts and conduct of his agent, performed within the

scope, or within the apparent scope, of the agency; (2) agency, knowledge and consent may be established not only by direct evidence, but by circumstantial evidence as well; and (3) the acts and declarations of an alleged agent may be considered with other competent proof of the agency for the purpose of establishing agency.

Along with these legal propositions is another, applicable here, that if there was any competent, relevant evidence adduced in the trial, tending to show that the appellant, by any of its agents, consented to the illegal use of the automobile by Anderson, or had knowledge of such use by him, it was the duty of the presiding Judge to submit such issues to the jury for determination.

With the legal propositions in mind, we consider first the exception (No. 7) of the appellant, based upon the refusal of the trial Judge to direct a verdict in its favor; and, in that connection, some of the grounds of exception 10, relating to the refusal to grant a new trial. The grounds upon which the directed verdict was asked were: (1) That the only reasonable inference to be drawn from the evidence was that the appellant was the innocent holder of the conditional sale contract (recognized as a mortgage under our law), constituting a lien over the automobile, and that the appellant had no knowledge of the illegal use to which the automobile was being put, or likely to be put, by Anderson; and (2) that there was no reasonable inference to be drawn from the testimony that Rivenbark, who sold the automobile to Anderson, and assigned the paper to the appellant, was an agent of the appellant, and, therefore, no knowledge which he had as to the illegal use of the automobile could be imputed to the appellant.

There was some evidence to show that Anderson, who lived in Horry County, the alleged "bootlegger" (and the allegation to that effect seems uncontroverted), bought the Buick automobile from Rivenbark on March 20, 1929, at Marion; he paid $552.00 in cash and executed, not to Riven-

bark, but, at Rivenbark's instance, to the appellant a conditional sale contract, covering the automobile purchased to secure the balance of the purchase price, $1,047.00, payable in monthly installments of $88.00; and the contract was assigned by Rivenbark to the appellant, not without recourse, but with the guarantee of Rivenbark to make payment in case of default by Anderson. The contract was executed in triplicate; the original went to the appellant's office in Columbia; Anderson, the purchaser, was delivered one; and Rivenbark kept the third. Appellant sent Rivenbark some money, the exact amount not stated in the record, for the paper. No money due on the paper was paid by Anderson to Rivenbark, such payments as were paid being sent by Anderson direct to the Columbia office. Rivenbark admitted, however, that he had notice from the company of Anderson's failure to make promptly one of the payments when it became due. Rivenbark and the appellant, within three years previous, had at least a hundred transactions of a similar kind. Many times customers made payments to Rivenbark, who remitted them to the appellant. Rivenbark would sometimes get after debtors about their payments. When the automobile involved here was seized, Rivenbark soon got notice of that fact and went before a magistrate in Horry County to assist in the issuing of papers to recover from the Sheriff the possession of the car. He testified that his purpose was to "prevent the car going to the Federal Government." The papers issued by the magistrate were in the name of Rivenbark as agent of the appellant. The magistrate, of course, did not have jurisdiction, the car being valued at a sum far greater than $100.00, and the action instituted was not carried forward. Another agent of the appellant visited Horry County and caused this action to be instituted. Rivenbark, right after the car was seized by the Sheriff, went to Conway and looked at the condition of the seized automobile.

While Rivenbark vigorously testified to the contrary, E. M. Hennessy, a peace officer, a witness for the respondents,

swore that prior to the sale of the Buick to H. P. Anderson, he informed Rivenbark that Anderson was engaged in the business of "bootlegging" in Horry County, along with his brother, Dock Anderson; the conversation, according to Hennessy, taking place after the sale of another Buick automobile by Rivenbark to Dock Anderson. Hennessy also testified that after the sale to H. P. Anderson, he had another talk with Rivenbark. In that conversation, he asked Rivenbark if he "wasn't afraid he would lose it," and that Rivenbark said, "No, he had sold Dock a Buick coupe and he hadn't had any trouble with that, and he didn't think he would have any trouble about the roadster." The roadster was the car sold to H. P. Anderson.

We, of course, have not attempted to give all the evidence in the case. It is not necessary to do so. The review we have given, however, seems to us to be convincing that there was some evidence to go to the jury on the two main issues in the case, and those which had to be considered by the trial Judge in passing upon the motion for a directed verdict, namely: First, the agency of Rivenbark for the appellant, and, second, the knowledge of the illegal use the automobile was to be put to, and, in all likelihood, it was being used for, by H. P. Anderson. The directed verdict asked for by the appellant was, therefore, properly refused.

The presiding Judge permitted the respondents to offer in evidence the papers fixed up by the magistrate for the purpose of procuring the return of the automobile, which were served on Sheriff Chestnut. In its 6th exception, the appellant claims this was prejudicial error, for the reasons that there was no proof that the papers were correct copies of the originals, no proof of the signature of Rivenbark thereto, and no notice of an effort to introduce copies, in lieu of the originals, had been given. Rivenbark testified that he signed some kind of papers for attorney T. B. Lewis to present to the magistrate. There was nothing

to show that the papers offered in evidence were not the papers fixed up by the magistrate, under the authority of Rivenbark and the attorney, who was acting for him at that time. It was not the purpose of the respondents to show the contents of the papers; the purpose was to show Rivenbark's conduct on the question of establishing his agency for the appellant. In view of all the circumstances, we do not see how there was any prejudicial error to the appellant in permitting the introduction of these papers.

The appellant sought to prove by Mr. Ritchie, one of its agents from the Columbia office, the assignment of the conditional sale contract by Rivenbark. Mr. Ritchie did not see Rivenbark execute the assignment and could not testify to his handwriting. The trial Judge said that Ritchie could be withdrawn from the witness stand and proof of the execution of the assignment by Rivenbark established by some other witness, and suggested that Rivenbark himself, if in the Court, could testify to the fact. Ritchie was withdrawn from the stand, and Rivenbark was thereupon sworn and he testified to the execution of the assignment by himself. In the course of the proceedings as to establishing execution of the assignment the Judge remarked to appellant's counsel, "You will have to prove it by some one who knows it." We are unable to see any error as complained of by the appellant as to these matters in its second and third exceptions.

On the cross-examination of Rivenbark, over the objection of appellant, he was asked about the sale of an automobile to Dock Anderson, brother of H. P. Anderson, a little while prior to the sale to H. P. Anderson. By its fourth exception, the appellant insists that this was error, since Dock Anderson had no connection with this case. The respondents, in their cross-examination, were doubtless seeking information, so as to assist in showing the relevancy of the testimony of their witness, Hennessy, as to the communication of Hennesy to Rivenbark that H.

P. Anderson and his brother, Dock, were engaged in the unlawful business of handling intoxicating liquors. On cross-examination of Rivenbark, the questions asked were entirely competent.

While Gore, a witness for the respondent, was testifying, an effort was made to show by the witness some information he may have given to Mr. Sutherland, while Sutherland was endeavoring to sell witness a Buick automobile. The purpose was to show that Sutherland was employed by Rivenbark as a salesman of cars, and we presume that Gore may have talked to Sutherland about the automobile sold by Rivenbark to H. P. Anderson. The trial Judge would not let Gore give this testimony, because, as he thought, there was no evidence to show agency on the part of Sutherland for either the appellant or Rivenbark. During the colloquy between the Court and counsel, the Judge remarked, "There is some testimony denying he (Rivenbark) was agent and some tending to show he was agent. Any notice to him would be competent." This language of the Court is alleged in the fifth exception to have been erroneous and prejudicial to the appellant's cause. We are unable to agree with the appellant in the contention made. We think it is clear that Judge Townsend was doing all he could to keep out incompetent evidence. When there was some evidence going to establish the agency of Rivenbark, it followed that testimony showing that Rivenbark had notice of the "bootlegging" business of H. P. Anderson was competent. Unless there was evidence to show Sutherland's agency, it was improper to allow testimony as to any notice he may have had of the illegal business conducted by Anderson. We think the Judge was trying to keep the attorneys straight on the evidence as to notice which he would permit—that they must first, at least, establish some evidence as to agency. We cannot think the remarks he made were prejudicial to the appellant, for, in his charge, the trial Judge expressly told the jury that the fact of

agency on the part of Rivenbark was one for them to determine. It was the duty of the Court not to allow communications to an alleged agent to be offered in evidence, until there was some evidence as to the agency. While, on the whole case, the issue of Rivenbark's agency had to be settled by the jury, it was necessary for the trial Judge to find some evidence of that agency before he could permit the introduction of communications by others to Rivenbark.

In the charge to the jury, the following instructions were given:

"If the automobile was being so used in transporting intoxicating liquors, used as a beverage, from one place to another, then the sheriff would have had the right to seize and to sell and dispose of same in order that it might be forfeited to the State and County."

"If Mr. Rivenbark was the agent of the General Motors Acceptance Corporation for the purpose of obtaining notes and chattel mortgages on contracts, securing the payments of purchase money by Buick cars sold through him, then any information or notice acquired by Rivenbark as to the nature of the purchaser's occupation at the time he took such papers for the General Motors Acceptance Corporation, or while acting as agent for such corporation, and in the furtherance or conduct of its business, if Rivenbark acted in such capacity, would be notice to the General Motors Acceptance Corporation, and would be imputed to that company."

In the eighth and ninth exceptions, error because of the quoted instructions is imputed. It is insisted that the instructions were erroneous, first, because they did not take into consideration the protection given an innocent mortgagee under the law; and, second, that there was no evidence that Rivenbark was acting in the capacity of an agent of the appellant. The second objection has been covered by what we have already said. When the whole charge of the trial Judge is considered, there is no substantial ground for the first objection made to the instructions. The jury

was plainly told, in other portions of the charge, that if the appellant had not consented for the automobile to be used for illegal purposes, and had no knowledge of its use for such purposes, their verdict should be in favor of the appellant. Standing alone, the instructions contained in the first quoted paragraph would not have been correct; but we cannot consider those instructions alone; we must regard all that the Circuit Judge said in delivering his charge to the jury.

What we have said as to the charge of the Court applies also to the motion for a new trial on the part of the appellant because of erroneous instructions in the charge.

When Ritchie was testifying for the appellant, the presiding Judge asked him, "Do you know Mr. Rivenbark's signature, Mr. Ritchie?" This question, and the other remarks and questions of the presiding Judge during the trial, to which attention has been called, the appellant says gave the jury the impression that there should be a finding for the respondents, and, consequently, the attitude of the Court was prejudicial to the appellant's rights and chances in the case (Exceptions 1 and 11). We think the main thing the trial Judge was endeavoring to do was to aid the attorneys for both sides to establish in the proper manner the facts they were seeking to bring out. A careful examination of the whole record bears out our view that the appellant had a fair and impartial trial, according to law.

The judgment of this Court is that the judgment below be affirmed.

Mr. Justices Stabler and Carter concur.

Mr. Justice Cothran (dissenting): The dissenting opinion heretofore filed by the writer is withdrawn and the following is submitted as a dissent to the majority opinion and as a dissent to the proposed order dismissing the petition for a rehearing:

This is an action in claim and delivery for the possession of a certain Buick automobile, which was seized by the de-

fendant Sheriff of Horry County, while being used in transporting a lot of contraband liquor. The car was owned and was being operated by one H. P. Anderson. The plaintiff claimed the right of possession under a certain conditional sale contract, practically a chattel mortgage, executed by Anderson to one Rivenbark and assigned by Rivenbark to the plaintiff and guaranteed by him.

(In the opinion of Mr. Justice Blease it is stated: "There was some evidence to show that Anderson * * * bought the Buick automobile from Rivenbark; * * * he paid $552.00 in cash and executed, not to Rivenbark, but, at Rivenbark's instance, to the appellant a conditional sale contract, covering the automobile," etc. This is clearly an inadvertent statement, as the contract in evidence shows that the contract was executed to Rivenbark, as plainly as language could express. The statement, further, is inconsistent with the further statement contained in the opinion, that "the contract was assigned by Rivenbark to the appellant, not without recourse, but with the guaranty of Rivenbark," etc.—a condition that would not naturally have existed if the contract had been executed to the Acceptance Corporation.)

It appears that on March 20, 1929, Rivenbark sold the car in question to Anderson for $1,599.00, Anderson paying $552.00 cash and executing the conditional sale contract to Rivenbark, as security for the balance $1,047.00, payable in 12 monthly installments of $88.00, beginning April 20, 1929 (the last installment being $79.00).

According to the course of the business relations subsisting between Rivenbark and the plaintiff corporation, Rivenbark on the same day drew a draft upon the plaintiff, then doing business in the City of Columbia for $958.00, the amount of the debt less $89.00 carrying charges, attached the contract to it and forwarded the draft for collection. The contract was assigned to the plaintiff and guaranteed by Rivenbark. The draft was paid upon presentation by the plaintiff.

Some time in July, 1929, after Anderson had made certain payments upon the contract, he was caught by the sheriff transporting about 40 gallons of liquor; he was arrested and the car was seized. On July 24th the plaintiff instituted the present proceeding.

Upon the trial of the case before his Honor Judge Townsend, there was no controversy as to the validity of the transaction between the plaintiff company and Rivenbark; nor as to the fact that there was default on the part of Anderson in the payment of the debt; nor as to the fact that the seizure by the sheriff breached the contract and entitled the plaintiff to claim possession of the mortgaged property. The contest was solely upon the issue whether or not the plaintiff had notice of the unlawful use to which Anderson had put the car. It was conceded that under the case of *Ward v. Greer,* 155 S. C., 426, 152 S. E., 678, the test of the right of a mortgagee to recover the property covered by his mortgage, which has been seized under Section 885 of the Criminal Code 1922, is the mortgagee's innocence in the use of the vehicle for the unlawful purpose of transporting liquor; that is to say, that the mortgagee who has notice of the unlawful use to which the car is being put is barred from asserting his claim.

There was no attempt to show that the acceptance corporation, personally, had the slightest notice, or even reasonable ground of suspicion, that the automobile, in the possession of Anderson, was being used "for the unlawful purpose of transporting alcoholic liquors." The defendants seek to bring the plaintiff under the rule announced in the *Ward v. Greer case,* by showing that Rivenbark had notice of the fact referred to, and that he being an agent of the acceptance corporation, notice to him was notice to the corporation.

The existence of the relation of principal and agent between the corporation and Rivenbark could be established only by the inherent character of their business association.

or by some conduct of Rivenbark, to the express or implied notice of the corporation, from which such relation could legitimately be inferred.

The business association between the plaintiff and Rivenbark does not indicate in the slightest degree that of principal and agent. The plaintiff was one of many corporations which have sprung up since the automobile was introduced; they are corporations which finance dealers in automobiles, by discounting paper which the dealers have taken upon credit sales, enabling them with the proceeds of such discount, to continue the endless chain of purchasing other cars and selling them upon the similar installment plan. The corporation had no interest whatever in the cars handled by Rivenbark prior to sales on credit by him; it was not a manufacturer or a dealer in cars; they were purchased by Rivenbark upon his own account without consultation with the corporation upon such terms as he chose to make with the manufacturers, and disposed of by him at his own pleasure; it was only after a car was sold upon credit that the relation between them was established, which was for the corporation to assist him in financing his business as distinct an engagement from the relation of principal and agent as could well be conceived.

If Rivenbark was the agent of the corporation, in what did the agency consist? A natural element in the relation is the power of the principal to direct the activities of the agent. The corporation had its business and Rivenbark had his, entirely distinct except when by convention they entered into a specific arrangement, as for instance the purchase of a credit obligation.

The evidence shows that, as Rivenbark had done in more than 100 other instances, in order to keep his business going, he drew a draft upon the plaintiff for the amount of the Anderson mortgage, less the discount, attached the contract to it, and forwarded it through the bank for collection. The plaintiff paid the draft and held in its possession the assigned

obligation of Anderson. There was nothing else for Rivenbark to do; the payments were to be made by Anderson directly to the plaintiff in Columbia; the plaintiff had its own collection agents.

In 21 R. C. L. 817, it is said:

"An agency has been defined as a contract, either express or implied, by which one of the parties confides in the other, the management of some business to be transacted in his name, or on his account, by which that other assumes to do the business and to render an account of it." 2 C. J., 419.

The evidence will be sought in vain for anything that tends to show that the plaintiff confided to Rivenbark, who was acting independently upon his own account, any business to be transacted by him in its name or for its benefit or account; or that there was any transaction for which Rivenbark was expected to account to the plaintiff.

It is suggested that Rivenbark was active in looking after the credit sales that he had made. He had guaranteed the Anderson obligation to the plaintiff in the assignment and it was but natural that he would evince an interest in Anderson's complying with the guaranteed contract; not as the agent of the plaintiff but in his own interest. In some instances payments, for the convenience of all parties, were made to Rivenbark who forwarded them to the plaintiff in Columbia, more as the agent of those who made payments than of the plaintiff. If Rivenbark was an agent of the plaintiff for any purpose, it is strange that the evidence contains no suggestion of a settlement between them as principal and agent.

Even if Rivenbark had been the agent of the plaintiff in the collection of the mortgages assigned by him, of which there is not a particle of evidence, the knowledge which he may have acquired as agent for that purpose that Anderson was a bootlegger could have had nothing to do with his agency and was not therefore imputable to the plaintiff.

There was evidence tending to show that after Rivenbark had sold the car to Anderson and had transferred the mortgage to the corporation, the police of Conway notified him that Anderson was a bootlegger and was using the car to transport liquor in it. How that could bind the corporation it is impossible for me to conceive. Under the *Ward v. Greer case* even the notice that Anderson was a bootlegger would not convey notice of the unlawful use of the car.

The main circumstance relied upon to show that Rivenbark was the agent of the plaintiff is the fact that after the seizure of the car by the sheriff, Rivenbark instituted an action of claim and delivery for the car, styling himself as agent of the plaintiff. There is nothing to show that he was authorized to institute such an action by the plaintiff; on the contrary, it appears that on the very day, or the next, that the action was instituted, the plaintiff sent its regular collection agent down to see about the seizure, who promptly disavowed the action, had it abandoned, and instituted the present one.

The salutary rule that the declarations of an agent cannot be offered in proof of the agency has been relaxed by allowing them in connection with other evidence of agency. Considering the abortive proceeding as such a declaration by Rivenbark, it stands alone, and was therefore inadmissible.

If there is a single circumstance in the case that indicates the agency of Rivenbark, I have not discovered it.

There being no evidence tending to show that the plaintiff knew or should have known of the unlawful use of the car by Anderson, it was entitled to the direction of a verdict.

Mr. Acting Associate Justice Mendel L. Smith concurs.