[Civil No. 4455.   Filed October 26, 1942.]

[130 Pac. (2d) 36.]

J. H. HALL, RAYMOND HALL, PRODUCERS MINES, INC., and EDDIE PYEATT, Appellants, v. LOUIS L. WALLACE, JR., as Administrator of the Estate of HARRY E. TEETER, Deceased, Appellee.

Messrs. Struckmeyer & Struckmeyer and Mr. E. Elmo Bollinger, for Appellants.

Mr. Louis L. Wallace, of Kingman, Arizona, and Mr. Alfred T. Cluff, of Los Angeles, California, for Appellee.

LOCKWOOD, C. J.—Harry E. Teeter, Vena V. Teeter, John H. Teeter and Myrtle Weidman were killed as the result of a collision between a Ford automobile, in which they were traveling, and a truck driven by one Eddie Pyeatt. Four suits were brought by the proper parties, alleging that each and all of these deaths were caused by the negligence of Pyeatt. J. H. Hall, Raymond Hall, Producers Mines, Inc., and Pyeatt were named as defendants. By agreement of counsel, the cases were consolidated and tried as one in the lower court, but separate verdicts and judgments were rendered, and separate appeals were taken. It was

agreed, however, that the appeals might be heard on one record. For the purposes of this appeal the deceased in the separate cases will be referred to jointly as plaintiffs.

There is little, if any, conflict in regard to the facts upon which the cases must be determined, and they may be stated as follows: On the morning of May 18, 1939, Eddie Pyeatt, one of the defendants herein, was driving an empty ore truck in an easterly direction upon the public highway from Producers Mines, Inc., in Mohave County, towards Chloride. This road intersected with U. S. Highway No. 93, which runs practically in a northerly and southerly direction. About fifty-five feet west of the center of Highway No. 93 is a stop sign. When the truck was in the intersection of these two highways, the Ford car, in which plaintiffs were traveling, ran head on into the right side of the truck near the driver's cab. As a result of the collision all of the plaintiffs were killed and Pyeatt was seriously injured. It is alleged that the accident was caused by the negligence of Pyeatt.

The only eyewitness as to how the collision, which admittedly caused the death of plaintiffs, happened was Pyeatt, and he testified on this point, so far as material to the determination of the appeals, as follows:

"A. Well I pulled up to the stop sign, which is a ways back from the road, stopped and looked in both directions; looked to the right and to the left I think, and there were no cars in sight for, I would say, three quarters of a mile; then shifted into low gear and started across, and when I got about the center of the highway I noticed a car coming several hundred feet and the next thing I knew it was only a few feet from the truck and had hit me. After that I didn't know much about the accident. . . .

"Q. Are you able to state the speed of that car as it came towards you? A. Well I couldn't say exactly,

but it was going at a terrific speed, probably as fast as a Ford would go in my estimation. . . .

"Q. As you came down to the highway you had a perfectly clear view for a distance of a half mile back on the Producers road of the highway to the south; that is true isn't it? A. Yes sir. . . .

"Q. When you reached the stop sign, did you stop even with the sign or did you continue up to the edge of the pavement? A. With the cab about even with the sign. . . .

"Q. At that point did you look down the highway? A. Yes. . . .

"Q. Down there where you saw a car approaching, am I right? A. Yes.

"Q. And that car was approaching; and that car was on the highway, heading in a northerly direction toward the intersection? A. I couldn't tell exactly but I thought it was in that direction but you couldn't tell that far. . . .

"Q. You looked after you got almost on the highway? A. Yes sir.

"Q. When you say almost on the highway, where were the front wheels of the truck when you looked again, as near as you can figure? A. At the center line.

"Q. You were on the highway when you looked again; is that a fact? A. Yes sir.

"Q. You had actually gone into the intersection and you were on the highway? A. Yes sir.

"Q. And your front wheels were up to about the center line? A. Right.

"Q. You hadn't looked at the highway to the south in the time when you saw the car about three quarters of a mile away until your front wheels reached the intersection; is that right? A. That is right. . . .

"Q. How—I wish you would do this; just try to reconstruct in your mind the stopping, and going through the mechanics of getting into gear, and let us know the best you can do? A. Probably a minute.

"Q. So you think the car would have been at a stop a full minute? A. I was in no particular hurry; I probably had plenty of time.

"Q. Anyhow it was quite an appreciable interval the car was standing still right there by the stop sign? A. Yes sir.

"Q. Now from the point where your truck was near the center line of the highway, then you saw this other car again? A. Yes sir.

"Q. How far away was it then? A. I would say it was three or four hundred feet. . . .

"Q. You aren't prepared to give any judgment as to the speed of this approaching car in miles an hour? A. I know it was faster than most of them go."

■ It is agreed that the verdicts must rest upon proved negligence on the part of Pyeatt which proximately caused or contributed to the deaths of plaintiffs, and that the doctrine of *res ipsa loquitur* does not apply. The only negligence which it is claimed the evidence shows Pyeatt was guilty of was an alleged violation of the first sentence of section 66–112, Arizona Code 1939, which reads:

"*Right-of-way, exceptions—Police and fire vehicles.*—When two vehicles approach or enter an intersection *at approximately the same time,* the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in the section following. . . ." (Italics ours.)

It is most strenuously urged that Pyeatt's own evidence shows that he knew the Ford car was approaching him from the right-hand side when he stopped at the intersection sign, but that notwithstanding that, he threw his truck into gear and proceeded to cross the highway without observing further whether the Ford car was approaching or not until after he had gotten to the center of the intersection when, for the first time after stopping, he again looked and saw the Ford car within three or four hundred feet of him, and it is claimed that this failure to look again after he stopped before he entered the highway, and to give the Ford car the right of way, under the circumstances was negligence.

■■ We think there can be no question that under the statute when two vehicles are approaching or

entering an intersection at approximately the same time, it is the duty of the driver of the left-hand vehicle to yield the right of way to the right-hand vehicle. But this duty is limited to circumstances when the approach or entering of the two vehicles is at approximately the same time and the respective rights of the vehicles are determined *as at the time of entry into the highway.* If a vehicle has once entered an intersection, it makes no difference as to how long it takes that vehicle, on account of its speed, weight or length, to cross through the intersection. The test is, was it in its right in entering? It follows as a corollary from the statute that if the left-hand vehicle enters the highway at a time not approximately that at which the right-hand vehicle approaches or enters it but before it, the left-hand vehicle is within its right in so entering. Let us apply this rule to the present case.

After Pyeatt had stopped at the boulevard sign, fifty-five feet, as shown by the evidence, from the center of the highway, when he started his truck again he had again begun to approach the highway. When he first stopped, the Ford car was approximately three-quarters of a mile away. We think no reasonable man could say that a car that distance away was approaching the intersection at approximately the same time as one fifty-five feet away.

But, say plaintiffs, Pyeatt should have looked again after he started the truck before he entered the highway. When he saw the Ford car three-quarters of a mile away, the vision of its driver at that time was as unobstructed as was that of Pyeatt, so that the former could have seen the truck close to the highway as well as Pyeatt could have seen the approaching Ford, and this the latter knew. Pyeatt was then entitled to assume the Ford driver would proceed at a reasonable speed, with due caution and circumspection and watching for cars crossing the highway. *Keeler* v. *Maricopa*

*Tractor Co., ante,* p. 94, 123 Pac. (2d) 166. It is obvious, by a mathematical computation, that had the driver of the Ford car done this he could easily have stopped in ample time to have averted the collision after the truck had entered the intersection.

If the Ford was at least four hundred feet away when the truck began to enter the highway, can a reasonable man say the Ford was also entering it or approaching it at approximately the same time? We think the answer must inevitably be "no."

A jury may not return a verdict against a defendant on surmises or guesses. The plaintiff must show affirmatively by a preponderance of the evidence that defendant was guilty of negligence. If the jury accepts the testimony of Pyeatt, the only eye-witness who testified, he was not guilty of any negligence. If it rejects such testimony, there is no evidence as to who, if anyone, was negligent. Unfortunate as the result of the collision was, from the evidence we think it plain that it was due to the sole negligence of the driver of the Ford car.

The trial court should have instructed verdicts in favor of defendants at the close of all the evidence, on the ground that there was a total lack of proof of negligence on their part. This makes it unnecessary to consider the other assignments of error.

The judgment of the superior court of Mohave county is reversed, and the case remanded with instructions to enter judgment in favor of defendants.

McALISTER and ROSS, JJ., concur.