[Civil No. 4418. Filed March 16, 1942.]

[123 Pac. (2d) 166.]

PHILIP KEELER, Appellant, v. MARICOPA TRACTOR COMPANY, a Corporation, and FRED BEHNCKE, Appellees.

Mr. W. J. Van Spanckeren, and Mr. R. H. Renaud, for Appellant.

Messrs. Snell & Strouss, and Mr. Mark Wilmer, for Appellees.

LOCKWOOD, C. J.—This is an appeal by Philip Keeler, plaintiff, from a judgment rendered on an in-

structed verdict in favor of Maricopa Tractor Company, a corporation, and Fred Behncke, defendants.

■■ The assignments of error present, in substance, but one question, and that is whether there was sufficient evidence introduced in the case to take it to the jury. In considering this question, we must, of course, take the evidence as strongly as is reasonably possible in favor of plaintiff, for it is only if there is no evidence that would justify a jury in finding the issues in his favor that the court is authorized to instruct a verdict against him. With this rule guiding us, let us consider the evidence as shown by the record.

On April 1, 1939, plaintiff was riding a motorcycle over the public paved highway extending from the town of Gilbert to the main Tucson-Chandler-Phoenix highway. About four miles south of Gilbert he passed over a slight rise in the pavement and noticed a truck standing in a field to the west of the fence line on the west side of the highway, and approximately 1800 feet distant. Between the rise in the highway and the location of the truck when it was first seen by plaintiff is the residence and farm of Grant Peterson, situated on the east side of the highway. Leading into this highway from the Peterson yard are two private driveways at right angles to the highway and lined with tamarisk trees, the northern one being located about 650 feet from the point of collision, and the southern about 375 feet. Plaintiff was en route to his home at Chandler and was thoroughly familiar with the highway. On previous occasions he had known of cattle and horses emerging from the Peterson driveways and running along and across the highway, and had had a couple of narrow escapes from collision with them, and for that reason he was afraid of a repetition of such incidents. Until he reached a point in the vicinity of the north driveway he had been looking

straight down the highway and at no time was there any truck or trailer on or moving onto the pavement within the range of his vision. When he had almost reached the north driveway he turned his attention to the left in order to watch the Peterson driveways to see if any stock emerged therefrom, and continued to do this until he had reached a point in the vicinity of the south driveway. The next thing he knew was that he was in the hospital, badly injured.

Defendant Behncke testified that just before the time of the accident he was driving a Ford truck with a two-wheeled trailer attached, owned by the corporate defendant, the total length of the truck and trailer being between 41 and 43 feet, and had gone into the field on the west side of the highway to get a hay rake belonging to the company. It was loaded on the trailer, and he then drove the truck to a point on the right-hand right of way of the highway, about 15 feet from the edge of the pavement so that he could have an unobstructed view of the highway and see if traffic were approaching. He saw plaintiff, but believing the latter was far enough away so that it was safe to proceed, threw his truck into low gear and started to go upon the paved portion of the highway and to make a left-hand turn to the north. He did not look again to observe plaintiff's position for about fifteen seconds, and when he did look the front of the truck was in the center of the pavement. He then noticed that plaintiff was approaching him at a high rate of speed and was not looking his way but to the east of the highway. He continued crossing the highway and turned to the left, and as he was engaged in this left-hand turn plaintiff apparently saw him, for the former began to ''jiggle his handle bars'' and in a few seconds the motorcycle struck the trailer in front of its wheel and its frame, and as a result of this collision plaintiff was seriously injured. Behncke also

testified that his speed from the time he started to enter the highway until the accident occurred was not less than three nor more than five miles per hour, and that at all times plaintiff was on his right side of the center of the highway.

The question is whether, upon this evidence, a jury would have been justified in finding that Behncke was guilty of any negligence whatever, which was a proximate cause of the accident, for if he was, even though there might be evidence that plaintiff was also negligent, the case was one for the jury. Art. 18, sec. 5, Const. of Arizona.

It is undisputed that Behncke was attempting to enter the public highway from private premises and through a private right of way, and not upon an intersecting public highway, and was making a left-hand turn. The question is whether it could reasonably be found that his action, under all the circumstances, was negligence.

Section 66–112, Arizona Code 1939, reads, in part, as follows:

" . . . The driver of a vehicle entering a public highway from a private road or drive shall yield the right-of-way to all vehicles approaching on such public highway."

Behncke testified that he saw plaintiff approaching 15 feet before the front of his truck reached the paved slab. He thus had warning that he was endeavoring to cross the pathway of an approaching vehicle *which had the right of way.* We think that under such circumstances it was his duty not to attempt the crossing unless, as a reasonably prudent man, he had a right to believe he could complete it before the motorcycle reached him. He did not look to see how far away the motorcycle was just before the truck entered the paved highway, but did look when its front had reached the center of the road.

Even taking his own testimony as to his speed in the light most favorable to him, it is evident that when the front wheels of the truck were at the edge of the pavement the motorcycle could not have been over 600 feet away, which agrees with plaintiff's testimony on this point. Considering the length of the truck and trailer and the slow speed at which it could travel, can we say a jury could not legally have found it was negligent for him not to look for and observe the position of the motorcycle immediately before he entered the pavement, and seeing it at not over 600 feet distance, not to wait till it had passed.

Under a statute identical with ours the Supreme Court of Louisiana, in the case of *Willis* v. *Standard Oil Co.*, 17 La. App. 217, 135 So. 777, 779, said:

"As the truck came out of the private driveway on to the street, he was required by the law of the town, as well as that of the state, to stop at the edge of the west side of the street and wait there so that the traffic going south on the street might continue to pass on the right side, and should not have entered into the street and drawn itself across, practically blocking the street, making a left-hand turn, until he had first seen that there was no oncoming traffic either north or south, making the movement dangerous. The driver of defendant's truck was shown to have been at fault in this respect."

Defendants, after an exhaustive review of the testimony, insist it shows that plaintiff himself was negligent, in that admittedly he drove his motorcycle without watching the road ahead of him from a point nearly 800 feet away from the accident until the latter occurred. They claim that if plaintiff had been watching the road he could not have avoided seeing the truck crossing, in ample time to stop his motorcycle, and thus avoid the collision.

It may be true that plaintiff was guilty of contributory negligence, but that is not the question before us.

If defendant Behncke had approached the main highway upon the intersection of another public road, it might well be said that he had a right to anticipate that plaintiff would keep such watch as to know Behncke would be in the intersection first, and would observe the rules prescribed for such a situation by section 66–112, *supra,* and himself slow down or come to a halt. But we must assume that both plaintiff and Behncke knew that since there was no public highway intersecting the one on which plaintiff was, he had the unquestioned right of way under all circumstances over vehicles entering as the truck did. We think, therefore, that Behncke was not entitled to rely upon a presumption that plaintiff would observe the road ahead of him at all times, and that he was not relieved of the statutory requirement that he should yield the right of way to plaintiff until the latter had passed.

■ It is, of course, true that notwithstanding the fact that Behncke was not entitled to assume that plaintiff would be watching the road ahead of him so that he would stop and allow Behncke to usurp his right of way, plaintiff might nevertheless by his conduct be guilty of contributory negligence. But that, as we have said, was a question to be submitted to the jury with the other issues.

Upon the whole record, we are of the opinion there was evidence to go to the jury on the question of whether Behncke was guilty of negligence which was a proximate cause of the accident, and the court, therefore, erred in directing a verdict.

The judgment is reversed and the case remanded for a new trial.

McALISTER and ROSS, JJ., concur.