[Civil No. 4592.   Filed December 6, 1943.]

[143 Pac. (2d) 884.]

WANDA DALORES MAYNARD, by her guardian ad litem, Wm. Maynard, Appellant, v. S. H. Hall, Appellee.

Mr. Mark Wilmer, for Appellant.

Mr. Albert W. Gurtler, and Messrs. Laney & Laney, for Appellee.

STANFORD, J.—This is an appeal from the Superior Court of Maricopa County. It arises out of an accident which occurred on the morning of the 16th day of January, 1942, while the plaintiff, a girl of the age of approximately ten years, was waiting with several other girls by the roadside at a point about five miles south of Gilbert, Arizona, for a school bus. A cement highway was running north and south at that point and was intersected by a dirt road running at right angles.

A man named Bud Pearson was driving his automobile in a northerly direction along the paved highway at a high rate of speed. As he reached the children at the road crossing he drove off the paved portion of the highway he was traveling and struck the plaintiff, carrying her about 45 feet, his car continuing on 192 feet. By reason of it the child's leg was mangled requiring that the same thereafter be amputated, and she was otherwise injured.

The case was heard before a jury. At the close of the evidence by the appellant herein, who was the plaintiff below, the appellee moved the court for an instructed verdict in favor of the appellee on the grounds:

"That the plaintiff has failed to make out a case of liability on the part of this defendant Hall for the reason that the plaintiff has not shown any such relation of master and servant between S. H. Hall and Bud Pearson as would render S. H. Hall liable; and the further ground that the plaintiff has even failed to show negligence on the part of Bud Pearson."

The trial court, on granting the motion, made the following statement:

"Counsel for the defendant here has made a motion directed to the Court, asking the Court to enter its order directing the jury to bring in a verdict for the defendant, on the ground that the plaintiff has failed to establish agency on the part of Pearson as the employee of Hall, and engaged at the time of the accident in the course of Hall's business, and on the further ground that no evidence of negligence has been established."

The principal contentions of the appellant are that the court erred in disallowing certain statements of two witnesses who came upon the scene just about the time the accident occurred, and they offered testimony as to the statements of Bud Pearson, the driver of the car and the person who is claimed to be the agent of the appellee herein. This testimony was the declaration of Bud Pearson at the scene of the accident and during the excitement of placing the injured child in a car, and was made within a minute and one-half to three minutes after the accident occurred, and was, as we understand from the evidence, his first expression, and the appellant submitted the same as a part of the *res gestae*.

Appellant also complains that the court erred in denying his request that certain portions of the deposition of the witness, Bud Pearson, who had left the country, be settled in advance of the reading of the deposition in evidence.

The appellee, among many other things, contends that Pearson was driving his own automobile, and that there was no presumption that at the time of the accident he was acting as a servant of appellee, and within the scope of his employment, and that it was incumbent upon the appellant to establish that fact by legally admissible evidence, and that the appellant failed to do, and accordingly the court, at the close of his case, directed a verdict in favor of appellee Hall.

The statements by each of the witnesses named, and which are in controversy here, are as follows:

Frank Lindsey testified:

"The Witness: I drove up and stopped, and Sanborn, he jumped out of the car and run down the road to get the car number, and I told this other fellow—

"Mr. Laney: I object to that. That is not the question. What Pearson said? A. Well, Pearson says, 'I am on my way to Gilbert after a trailer.' He says, 'I am working for Slay Hall, and I am going after a trailer now.'

"Mr. Wilmer: Q. Was there anything that was said to him that caused him to say that?

"Mr. Laney: Now, may the objection that this is hearsay and no foundation laid go to this entire conversation?

"The Court: Yes sir.

"Mr. Wilmer: Q. Was there any statement made to Mr. Pearson at that time by anyone that elicited that statement or that answer? A. Yes, Sanborn—he told us he would follow us in, and Sanborn said, 'You be damned sure you do follow us in,' and he said, 'I am. I work down here for Slay Hall, and I am on my way after a cotton trailer now.'"

Bert Sanborn testified:

"Why, when I stopped, and these gentlemen—and these gentlemen were standing there, and I said to Mr. Pearson, 'This is a pretty tough thing,' I says, 'How did it happen?' And he says, 'I don't know how it happened,' and I says, 'I will go down and get the license number of this car,' and he says, 'It won't be necessary at all, because I work for Mr. Hall, and I will be along, following you right in.' And I told him that is what he should do."

Sanborn further testified:

"A. Why, that happened before I took the license number; when I told him that I would go and get the license number he said, 'It isn't necessary; I will follow you right in,' and he says, 'I work for

Mr. Hall.' That is the reason he made that statement, he figured it wouldn't be necessary to get the license number, we would probably see him.''

In main, we are correct on the quotations above, and in any event it carries out the purpose necessary in this case although the court did strike some of the evidence of witnesses.

■ It is not disputed that agency cannot ordinarily be established by the declarations of an agent. However, the exception to the rule is where, upon the whole case there appears other evidence from which an inference of agency arises, then *res gestae* statements are admissible and it is a matter for the court or jury to then determine.

That rule is carried out in the case of *Broadway* v. *Jeffers*, 185 S. C. 523, 194 S. E. 642, 647, 114 A. L. R. 1244, submitted by appellant, and from which we read the following:

''It is true that the declarations of an agent alone as to his agency are insufficient to prove agency; but it is also well established that if there are other corroborating facts and circumstances disclosed by the testimony, agency then becomes a question for the jury. *General Motors Acceptance Corp.* v. *Chestnut, Sheriff, et al.*, 158 S. C. 42, 155 S. E. 231; *Meehan* v. *Commercial Casualty Insurance Co.*, 166 S. C. 496, 165 S. E. 194.''

And the appellant submits to us:

''His (alleged agent's) acts and statements cannot be made use of against the principal until the fact of the agency has been shown by other evidence.''

This is taken from Mechem on Agency, page 208, Volume 1.

Appellant cites among the many other cases listed, the case of *Stover* v. *Mackie,* 170 Okl. 574, 41 Pac. (2d) 474, 476:

"While it is the general rule that declarations of an agent made to a third person in the absence of the alleged principal are inadmissible in evidence for the purpose of establishing agency, notwithstanding the rule, it has many well-established exceptions; one of the well-recognized exceptions to the rule is that, when agency is otherwise established by competent testimony, such declarations become admissible in corroboration and as part of the *res gestae,* where made at the time of the transaction in question. *Citizens' Bank of Gans* v. *Mabray,* 90 Okl. ·63, 215 Pac. 1067.''

Alpha Biggers, who worked as a cotton picker for the appellee, testified that Pearson also worked there as weight man and that he carried in his car the weighing scales when they were not in use on the truck for the purpose of weighing cotton.

Appellee Hall, as a part of his case submitted in his brief, calls the court's attention to his evidence taken on cross-examination, allowed by our statute, by the appellant, and brought out the fact that for approximately two weeks before the accident Pearson had been picking cotton for appellee and weighing the cotton for Pearson's own family and one or two others, and that he paid Pearson five cents for each one hundred pounds for the work of weighing cotton; that Pearson had worked for appellee off and on for about two years, but never steadily for over a month or a month and one-half at a time, and that appellee never employed or authorized Pearson to go after a cotton trailer; that if Pearson was going after a cotton trailer at the time of the accident, appellee knew nothing of it, nor did he authorize him; that he never authorized Pearson to use Pearson's automobile for appellee's business, nor ever bought Pearson oil or gas for his automobile, and that the appellee had his own pick-up truck to use for the purpose of pulling cotton trailers.

Appellee cites the case of *Litchfield* v. *Green*, 43 Ariz. 509, 33 Pac. (2d) 290, 292, and states that that case "Likewise holds that statements made by an alleged agent are inadmissible to prove the existence of agency, which must rest on direct evidence of acts or words of the alleged principal."

From that case, however, we quote the following:

"An agency may be proved to exist in four ways: First, by direct evidence of an express contract of agency between the principal and the agent. There is not a scintilla of direct evidence that there was any specific contract between defendant and McMicken authorizing the latter to employ plaintiff.

"Second, by proof of facts which raise the implication of such a contract. In regard to this we have said in *Little* v. *Brown*, 40 Ariz. 206, 11 Pac. (2d) 610, 613:

" ' . . . Agency does not have to be proved by direct testimony. It is susceptible of proof as is any other fact and may be established from the circumstances, such as the relation of the parties to each other and to the subject-matter, their acts and conduct. . . . ' ' '

The appellee cites the case of *Southwestern Freight Lines* v. *Floyd*, 58 Ariz. 249, 119 Pac. (2d) 120, 126, which case holds that whether a statement should be admitted in evidence as a part of the *res gestae*, is in a great measure left to the discretion of the court. That, of course, is the solid law of our state, and while, as the case states,

"The weight of authorities, however, inclines toward leaving the question of admissibility of this class of testimony in a great measure to the discretion of the trial court. The facts are before him, and he has a better opportunity to determine whether testimony of this character is in fact a part of the things done, a part of the *res gestae*, than an appellate court,"

yet, it does not by any means give the trial court complete control over such matters.

■■ The appellee has cited other cases in his behalf, but we submit the following from 32 C. J. S., Evidence, § 403:

" . . . An examination of the cases will disclose, it has been stated, that the statement of declaration concerning which testimony is offered must, in order to be admissible as part of the *res gestae,* possess at least the following essential elements: (1) The statement or declaration must relate to the main event and must explain, elucidate, or in some manner characterize that event, see *infra,* §§ 404–409. (2) It must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair, see *infra* § 420. (3) It must be a statement of fact, and not the mere expression of an opinion, see *infra* § 421. (4) It must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design, see *infra* § 417. (5) While the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation. See *infra* §§ 411–413. (6) It must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made, . . . "

We believe the statements in question come within this rule.

■ In this case evidence has been shown to the effect that the appellee did pay for the fine of Bud Pearson. That, of course, may be taken into consideration along with other things, whether he paid for it with his own money, or with the money of the Pearson family.

In the case of *Keeler* v. *Maricopa Tractor Co.*, 59 Ariz. 94, 123 Pac. (2d) 166, 167, we find this statement in the trial of a negligence case:

" . . . it is only if there is no evidence that would justify a jury in finding the issues in his favor that the court is authorized to instruct a verdict against him. . . . "

On the point raised by the appellant in reference to the deposition of Bud Pearson, we feel that is a matter to be left to the attention of the trial court.

█ We hold that the testimony of both Lindsey and Sanborn as to statements made by Bud Pearson at the scene of the accident should be admitted in evidence as part of the *res gestae*. In making this holding, we do so in keeping with the modern trend of being liberal in the admission in evidence of such statements, and, by our opinion, we merely express the view that this case should go to the jury.

There is sufficient evidence to allow the jury to pass on the question, but by the return of this case for a new trial, we make no inference as to what the ultimate verdict should be.

The judgment is reversed and the case remanded for new trial.

McALISTER, C. J., and ROSS, J., concur.