529 P.2d 224

Ray HOVATTER, Individually and as Administrator of the Estate of Barbara L. Hovatter, Deceased; and Barbara Hovatter and Sandra Hovatter, Appellants,

v.

SHELL OIL COMPANY, a foreign corporation, Appellee.

No. 11692.

Supreme Court of Arizona,
In Division.

Dec. 13, 1974.

Rehearing Denied Jan. 14, 1975.

Raymond Huffsteter, Phoenix, for appellants.

Burch, Cracchiolo, Levie, Guyer & Weyl by Joseph L. Moore and John F. Day, Phoenix, for appellee.

HAYS, Chief Justice:

Jurisdiction of this case was taken pursuant to Arizona Podiatry Assn. v. Director of Insurance, 101 Ariz. 544, 422 P.2d 108 (1966).

Plaintiff Ray Hovatter had had his butane tank filled at Simkins Shell Service, operated by C. Dan Simkins, about three or four days prior to May 18, 1968. On the night of May 18, the other butane tank that Hovatter used for home heating and cooking went out and he hooked up the recently filled second tank. The bleeder valve was leaking; he tightened it, but a few minutes later one of his daughters smelled gas in the house. Hovatter went out to the tank. Because of a hissing noise, he knew that the tank was leaking and so he shut off the valve. His wife, plaintiff Barbara Hovatter, came out of the house with a lantern at about the same time that the safety valve of the tank blew out and the tank exploded into flames. The Hovatters and one daughter were badly burned; one daughter died.

The Hovatters sued Simkins and the Shell Oil Company. Both defendants moved for summary judgment. Shell's motion was granted and Simkins' motion denied; plaintiffs appealed from the granting of summary judgment for Shell. During the pendency of the appeal, plaintiffs signed a document entitled "Covenant Not To Sue, Resue, Reinstate or Execute" with defendant Simkins and entered into a stipulation by which the case as to Simkins was dismissed without prejudice. By that time, the statute of limitations had run. A.R.S. § 12–542. Shell Company then made a motion to dismiss the appeal which motion was denied.

Three issues are thereby raised: (1) whether the dismissal of the case against Simkins relieves the alleged principal, Shell Oil Company, from any liability, (2) whether the covenant not to sue relieves Shell from liability, and (3) if it does not, and assuming liability on the part of the distributor, whether Shell is liable under the doctrine of respondeat superior or any other theory reasonably framed by the pleadings.

Where the master's liability is based completely on the negligent acts of his servant, a judgment on the merits in favor of the servant relieves the master of liability. DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342 (1945). Both parties agree that had the case against Simkins been dismissed with prejudice, such dismissal would have operated as a dismissal on the merits. Torres v. Kennecott Copper Corp., 15 Ariz.App. 272, 488 P.2d 477 (1971). Appellee argues that because here the dismissal without prejudice occurred after the statute of limitations on personal injury actions had run and an action against Simkins could no longer be brought, the dismissal was, in effect, a dismissal with prejudice. We disagree. A statute of limitations is not a determination of liability; it merely prevents the bringing of an action when pled as an affirmative defense. Because a case has been dismissed prior to a determination on the merits, i. e., without a determination of the liability of Simkins in this instance, liability cannot be presumed because a statute uninvolved with liability may be used to prevent the institution of a cause of action.

The above being true, the next question presented is whether the covenant not to sue Simkins signed by plaintiffs relieves Shell, the alleged principal, of liability.

There is a split of authority as to whether a document covenanting not to sue one primarily liable operates to release one whose liability is solely derivative. See Annotation, 20 A.L.R.2d 1044. This court has said, however, that a covenant not to sue is not a legal release of liability for the tort. Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022 (1937). In the covenant between plaintiffs and Sim-

kins, plaintiffs expressly reserved the right to proceed with the action pending against Shell. Covenants not to sue should be construed in harmony with the intent of the parties. Fagerberg v. Phoenix Flour Mills Co., *supra*. Furthermore, we agree with the opinion expressed in Holcomb v. Flaving, 62 Ill.App.2d 245, 210 N.E.2d 565 (1965):

> "In our opinion it matters greatly how the servant's liability was extinguished. Where the master's liability rests solely on respondeat superior, if the servant is exonerated by trial on the merits, then, of course, the master cannot be held liable, but there is no logical or legal basis for extending the rule to situations where a servant terminates his liability by obtaining a covenant not to sue." 62 Ill.App.2d at 249, 210 N.E.2d at 567.

In the distributorship agreement between Simkins and Shell, the agent agreed to indemnify Shell if Shell was found liable in an action of this nature. This is an agreement between the agent and Shell and not at issue here. Simkins must have known of this contractual provision but he assumed the risk that he might be called upon to reimburse Shell for reasons of his own, independent of the action here.

Shell having not been relieved of potential liability by the dismissal of the case as to Simkins nor by the covenant not to sue, the issue of the propriety of the summary judgment for Shell remains.

Summary judgment is appropriate when there is no genuine issue as to any material fact. Livingston v. Citizen's Utility, Inc., 107 Ariz. 62, 481 P.2d 855 (1971).

Simkins was the distributor of Shell products from a Shell bulk plant station in Salome, Arizona. He also sold butane gas supplied to him by another company under the "Doxol" label. The butane tank for filling cylinders bore the Doxol label. Liquified petroleum gas is not a Shell product nor did Shell receive any profit from its sale. The issue becomes whether Shell can be held liable under any theory for a product not its own and not bearing its label. If Simkins were Shell's agent, then it would be appropriate to consider whether Shell should be held liable for a product which it may have impliedly represented as its own. If Simkins were an independent contractor, then Shell would not necessarily be liable for the alleged negligence of Simkins in handling the product of a different manufacturer.

The distribution of petroleum products is unique compared with the distribution of other products. A bulk plant station is not equipped to sell several brands of gasoline from which the public may choose. Because of the nature of the product and the particular manner in which it must be stored and dispensed, operators of bulk plant and gasoline stations handle the products of only one petroleum manufacturer. Frequently, they also handle associated products of other manufacturers that can be more readily distributed competitively within the same operation, *e. g.*, tires, and provide various services to the public. It is, therefore, very common to find in the case law that an operator of a bulk plant facility or a gasoline station is an independent contractor in the petroleum business. Hendrix v. Phillips Petroleum Co., 203 Kan. 140, 453 P.2d 486 (1969); Foster v. Steed, 19 Utah 2d 435, 432 P.2d 60 (1967); Coe v. Esau, 377 P.2d 815 (Okl.1963); Cawthon v. Phillips Petroleum Co., 124 So.2d 517 (Fla.App.1960); Keith v. Mid-Continent Petroleum Corp., 272 P.2d 371 (Okl.1954); Horan v. Richfield Oil Corp., 56 Ariz. 64, 105 P.2d 514 (1940).

Simkins received Shell products on consignment, the title remaining in Shell until such products were sold. Simkins, as Shell distributor, was permitted to use Shell trademarks, brands and signs to encourage the sale of such products. He also honored Shell credit cards and agreements. The company required careful accounting procedures and reserved the right to make any repairs or replacements on the premises to be reimbursed by the distributor.

However, Simkins retained full responsibility for the management and operation of the business and paid all of those expenses, including expenses for storage, sale and delivery of the products, wages, taxes, furnishing and maintaining all equipment for sale and delivery, and obtaining all necessary licenses and permits. Simkins had full responsibility for his employees.

The characteristic of an independent contractor is that he is independent of his employer in the manner of achieving the result for which he has been contracted; *i. e.*, he represents the will of his employer only as to the result of his work and not as to the means by which it is accomplished. Barker v. General Petroleum Corp., 72 Ariz. 187, 232 P.2d 390 (1951). Each case must be decided on its facts, and we find that Simkins was an independent contractor of Shell Oil Company. The company signs and emblems are no more than notice that its products are being marketed there, and it is a common practice and a matter of common knowledge that the distinctive signs are displayed by independent dealers. Coe v. Esau, *supra*. The use of the company's credit cards are a business advantage to the operator. Coe v. Esau, *supra*. Essentially, Shell as a manufacturer and Simkins as a dealer had independent but mutual interests in the sale of Shell products. Simkins, however, determined his methods of doing business and remained free to sell Doxol butane. While a principal contractor will be liable for the negligence of an independent contractor performing inherently dangerous work, Ambriz v. Petrolane, Ltd., 49 Cal.2d 470, 319 P.2d 1 (1957), Simkins undertook the sale of butane, independent of any relationship that he had with Shell. There is no factual connection here at all between the activities of the Shell Oil Company and the explosion at the Hovatter home.

There being no genuine issue of material fact, the summary judgment is affirmed.

CAMERON, V. C. J., and STRUCKMEYER, JJ., concur.