571 P.2d 699

RAY KORTE CHEVROLET, an Arizona Corporation, Appellant,

v.

Caroline F. SIMMONS, a single woman, Appellee.

No. 1 CA–CIV 3465.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 15, 1977.

Rehearing Denied Oct. 21, 1977.

Review Denied Nov. 15, 1977.

Burch, Cracchiolo, Levie, Guyer & Weyl, P.A. by Daniel Cracchiolo, Robert A. Guyer, Phoenix, for appellant.

Langerman, Begam, Lewis, Leonard & Marks, P.A. by Samuel Langerman, James J. Leonard, Jr., Barry C. Schneider, Noel A. Fidel, Phoenix, for appellee.

## OPINION

NELSON, Presiding Judge.

This is an appeal by Ray Korte Chevrolet (Korte) from a jury verdict in a personal injury case that awarded to the plaintiff-appellee, Caroline F. Simmons (Simmons), the total sum of $671,520.00 damages. The appellant raises several questions on appeal, including the trial court's jurisdiction, the finding of liability, the admissibility of evidence, the propriety of the closing argument of counsel and the trial court's refusal to give certain instructions. For the reasons stated below we find there was no error and affirm the judgment.

The facts disclose that James L. Stone was a salesman employed by Korte. On May 3, 1971, the automobile he was driving struck the car appellee was driving, head-on. Stone was killed in the accident and Simmons was severely injured. Stone was in the wrong lane of traffic at the time of the collision and had consumed some alcohol prior to the accident. Further facts will be presented as they become pertinent to a discussion of the issues.

### I. JURISDICTION

■ Initially we must consider whether this Court has jurisdiction over the appeal. *Gabriel v. Murphy,* 4 Ariz.App. 440, 421 P.2d 336 (1966).

On August 23, 1974, the trial court entered a summary judgment dismissing the complaint. Subsequently on August 28, within the requisite time period, Arizona Rules of Civil Procedure 59(d), Simmons filed a motion for rehearing which the trial court granted, and on September 30, 1974, by minute entry the original judgment of dismissal was vacated. On March 20, 1975, a formal written order vacating the judgment was filed and a trial on the merits followed.

Appellant now contends that the trial court's action in vacating the dismissal was without jurisdiction since the 60-day appeal

period, Rule 73(b), Arizona Rules of Civil Procedure, 16 A.R.S., had run on the judgment of dismissal prior to the issuance of the formal written order on March 20, 1975. Thus, the appellant argues the subsequent trial, and this appeal from its results, are a nullity.

We reject this contention on the authority of *Maganas v. Northrup,* 112 Ariz. 46, 537 P.2d 595 (1975), which held that a motion for new trial can be asserted against a summary judgment pursuant to Rule 59, Arizona Rules of Civil Procedure. See also the recent decision of this Court in *John Carollo Engineers v. Sharpe,* (No. 1 CA–CIV 3806, filed May 19, 1977). As a consequence, the time for filing an appeal from the summary judgment was suspended until the order granting the motion was entered. The trial court therefore had jurisdiction to vacate the summary judgment.

Nonetheless, it is argued that the motion was not a "motion for new trial" but a "motion for rehearing" and therefore not a Rule 59 motion which would suspend the running of the appeal period under Rule 73(b). The problem raised here is whether the correct name must be placed on the motion in order for it to be effective in suspending the running of the appeal period.

We hold that the trial court correctly treated the motion as one for a "new trial" under Rule 59, even though it was not labeled as such. We will look to the substance and not the form in this instance. There is, however, disagreement on this issue in Division One of the Court of Appeals. *See Spradling v. Rural Fire Protection Company,* 23 Ariz.App. 549, 534 P.2d 763 (1975) (*cf.* dissenting opinion of Judge Froeb); *Matter of Estate of Balcomb,* 114 Ariz.App. 519, 562 P.2d 399 (1977); *Hegel v. O'Malley Insurance Company* (unpublished order presently on review in the Arizona Supreme Court, 1 CA–CIV 3705, Supreme Court No. 13223–PR).

In the instant case, therefore, the appeal period on the judgment was suspended by the timely motion for rehearing and was subsequently properly vacated by the court, making the ensuing trial and this appeal jurisdictionally proper.

## II. COVENANT NOT TO SUE

■ The second issue revolves around a covenant [1] executed by the appellee releasing the principal tortfeasor, Stone, from suit, but expressly reserving any action the appellee might maintain against the appellant. There is an unquestionable split of authority on the issue of whether a document covenanting not to sue one primarily liable operates to release one whose liability is solely derivative, *see* Annot. 20 A.L.R.2d 1044, 92 A.L.R.2d 533. However, because of the nature of this covenant, we need not reach that issue here.

Since the covenant herein is clearly a covenant not to sue and not a release from liability on the underlying tort, it did not release Korte.

Two Arizona Supreme Court decisions have held that since a covenant not to sue does not adjudicate the merits of the case, it releases only those parties specifically

---

1. The pertinent portions of the covenant follow:

"[F]or and in consideration of the sum of . . . ($10,747.00) . . . the said CAROLINE F. SIMMONS does hereby covenant and agree and does hereby irrevocably bind herself at no time or place to commence any action or suit on account of any claim for damages against the said JAMES L. STONE, JUNELLA STONE, the ESTATE OF JAMES L. STONE, and the FARMER'S INSURANCE GROUP."

"IT IS FURTHER agreed and understood that the payment of the consideration herein mentioned shall in no wise debar or affect any action against RAY KORTE CHEVROLET, or their employees or agents, or any other person or corporation, arising out of the accident herein before mentioned; that the consideration herein expressed is paid solely for this covenant not to sue the said JAMES L. STONE, JUNELLA STONE, the ESTATE OF JAMES L. STONE, and the FARMER'S INSURANCE GROUP; that the right to sue RAY KORTE CHEVROLET, their employees or agents, or any other person other than the said JAMES L. STONE, JUNELLA STONE, the ESTATE OF JAMES L. STONE, and the FARMER'S INSURANCE GROUP is hereby expressly reserved."

mentioned in the agreement. *Hovatter v. Shell Oil Company,* 111 Ariz. 325, 529 P.2d 224 (1974); *Fagerberg v. Phoenix Flour Mills Company,* 50 Ariz. 227, 71 P.2d 1022 (1937).

In the *Hovatter* decision, the principal would similarly have been liable only on respondeat superior grounds. The Court there said that since the covenant expressly reserved the right to proceed against the principal, and since the covenant should be interpreted following the intent of the parties, citing *Fagerberg v. Phoenix Flour Mills Company,* the covenant would not release the principal. The Court agreed with an Illinois opinion which states:

> "In our opinion it matters greatly how the servant's liability was extinguished. Where the master's liability rests solely on respondeat superior, if the servant is exonerated by trial on the merits, then, of course, the master cannot be held liable, but there is no logical or legal basis for extending the rule to situations where a servant terminates his liability by obtaining a covenant not to sue. *Holcomb v. Flaving [sic],* 62 Ill.App.2d 245, 249, 210 N.E.2d 565, 567 (1965)."

The Illinois Supreme Court subsequently reversed this appellate decision, explaining:

> ". . . if the defendants (employers) would have to respond in damages, they could sue their alleged employee, the covenantee, for the amount they had to pay. The employee would then have to respond in the very damages which the covenant was supposed to guard against. The contrary result reached by the appellate court herein would certainly involve an undesirable circuity and multiplicity of actions." *Holcomb v. Flavin,* 34 Ill.2d 558, 216 N.E.2d 811 (1966).

Therefore, the judge reasoned, if the employer was entitled to common law indemnity from the employee, the covenant would be of absolutely no value to the employee since he would be unprotected against an action by the employer. Consequently the Illinois court held that a covenant releasing the employee necessarily released the employer. This was not, however, Illinois' last word on the issue.

In a subsequent case distinguishing *Holcomb,* the Illinois Supreme Court held that where a party is specifically excluded from the covenant, he may still be sued. *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.,* 57 Ill.2d 298, 312 N.E.2d 259 (1974). In fact, in *Holcomb* itself, the judge pointed out that in those jurisdictions which have held that the covenant not to sue the servant or agent did not bar an action against the master or principal, the instruments had contained express reservations of the covenantor's right to proceed against the covenantee's master or principal.

Similarly, in the instant case the issue of whether a covenant executed in favor of the principal tortfeasor releases the party secondarily liable need not be reached since the Arizona Supreme Court in *Hovatter* has said that such covenants shall be governed by the intent of the parties. Here there was clearly an intent to reserve a right of action against Korte. See Note 2, *supra.* We do not reach the issue of what would happen were rights against the principal not so expressly reserved.

## III. EVIDENTIARY QUESTIONS

Appellant's next several allegations of error go to the heart of this controversy. In order to establish Korte's liability, plaintiff had to prove that Stone was acting within the course and scope of his employment at the time of the accident. *Scottsdale Jaycees v. Superior Court of Maricopa County,* 17 Ariz.App. 571, 499 P.2d 185 (1972).

The testimony on this issue is conflicting and must be viewed in the light most favorable to sustaining the verdict. *Mahurin v. Schmeck,* 95 Ariz. 333, 390 P.2d 576 (1964). Stone was officially off his regular shift when the accident occurred. He had gone to a neighborhood bar with another salesman after work and consumed approximately three beers. He subsequently returned to his office, made several business phone calls, including one to a Mr. Charles Urban, and then left to pick up Mr. Urban. Appellant seeks to have Urban's testimony regarding the phone conversation he had

with Stone excluded from evidence. That testimony, while not completely dispositive, was an important part of appellee's case.

■ The phone conversation was admitted to show that Stone planned to pick up Urban just prior to his death and take him to the Ray Korte showroom. Mr. Urban's testimony regarding Mr. Stone's stated intention to pick him up to show him trucks is admissible as evidence of Stone's state of mind.

> Wigmore pronounces the rule as follows: "It has already been seen . . . that the existence of a *design* or *plan to do* a specific act is relevant to show that the act was probably done as planned. The design or plan, being thus in its turn a fact to be proved, may be evidenced circumstantially by the person's conduct
>
> . . . .
>
> But, as a condition of mind, the plan or design may also, it is clear, be evidenced under the present exception by the *person's own statements* as to its existence. The only limitations as to the use of such statements (assuming the fact of the design to be relevant) are those suggested by the general principle of this exception . . . namely, the statements must be of a *present existing state of mind*, and must appear to have been made in a natural manner and not under circumstances of suspicion. [Emphasis in original] 6 Wigmore, *Evidence*, § 1725 (Chadbourn rev. 1976)"

A situation with facts exceptionally similar to the instant case was *Wibye v. United States*, 87 F.Supp. 830 (N.D.Cal.1949), *affirmed* 191 F.2d 181 (9th Cir. 1951). That case involved an automobile accident in which an employee for the United States collided with plaintiffs while the employee was driving on the wrong side of the road. The employee died immediately. The question, as here, was whether the employee was within the scope of his employment when the accident occurred. Evidence of a telephone conversation between the deceased employee and his mother was introduced. The conversation was to the effect that the employee would be leaving La-

throp, California the next day to travel to Fort Lewis, Washington, a distance of 900 miles, and that on his way he would stop and visit his mother in San Francisco. It was during the leg of his journey between Lathrop and San Francisco that the accident occurred. The court, citing *Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892), held the conversation admissible, and stated as follows:

> " . . . This is so because it falls within a well-recognized exception to the hearsay rule, namely, the so-called 'state of mind exception.' The rationale of this exception is that a person's own statement of a presently existing state of mind, made in a natural and unsuspicious manner, is proper evidence with respect to a design or intent to perform a specific act. It is clear that Hadley's statement to his mother was a completely unrehearsed and spontaneous announcement of his plan, intent and purpose of returning to Fort Lewis, Washington, via San Francisco. His mother's testimony as to such statement was therefore admissible." *Id.* at 832.

■ The "state of mind" exception to the hearsay rule has been recognized in Arizona. *Valley National Bank v. Hay*, 13 Ariz. App. 39, 474 P.2d 46 (1970), *rehearing denied*, 13 Ariz.App. 180, 475 P.2d 9, (1970); *Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488, 421 P.2d 507 (1966).

Further, appellant submits that the admission of this testimony was an improper attempt to prove an agency relationship between Stone and Korte through hearsay.

The Arizona Supreme Court in *Maynard v. Hall*, 61 Ariz. 32, 143 P.2d 884 (1943), determined that an agency relationship cannot be established *solely* by declarations of the agent. However, where there appears other evidence from which an *inference* of agency arises, then such statements are admissible.

■ There is ample "other evidence" of agency here. There is no question that Mr. Stone worked for Ray Korte. Fellow sales-

men testified that it was customary practice to work during off-hours. Further testimony indicated that Stone had sold Urban vehicles previously and had been dealing with him on the sale of a truck. Finally, one salesman testified that prior to the accident Stone remained in the office to make some business phone calls after his assigned shift was over. While this testimony by itself may not have been enough to prove the agency relationship vis-a-vis the trip in question, it was certainly sufficient to create an *inference* of an agency relationship, thereby making evidence of Stone's telephone call to Urban admissible on the issue of agency. *Maynard v. Hall, supra.*

■ The next issue is whether the testimony of Stone's brother regarding a conversation he had with Urban was inadmissible hearsay upon hearsay. The conversation, occurring shortly after Stone's death, corroborated Urban's testimony regarding the conversation had with the decedent immediately prior to his death. In the cross-examination of Mr. Urban, appellant's counsel sought to impeach him through use of prior inconsistent statements. In addition, counsel tried to show Urban's inability to clearly recall the events in question, thereby inferring that Urban's testimony was, if not a recent fabrication, at least not a true account of the facts.

Under these circumstances the Arizona courts have held that the use of prior consistent statements is proper for rehabilitation where an issue of recently contrived testimony is injected. *State v. Crank*, 13 Ariz.App. 587, 480 P.2d 8 (1971); *State v. Richmond*, 23 Ariz.App. 342, 533 P.2d 553 (1975). Further, the Arizona Supreme Court held in *State v. Finn*, 111 Ariz. 271, 528 P.2d 615 (1974), that when such testimony is allowed for the purpose of corroboration, rehabilitation testimony is admissible for its substance as well.

## IV. SCOPE OF EMPLOYMENT

■ Appellant next contends the evidence did not support the jury finding that Stone was within the scope of his employment at the time of the accident. Under Arizona law, an employee is acting within the scope of his employment while he is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental to the employment. *Scottsdale Jaycees v. Superior Court of Maricopa County*, 17 Ariz.App. 571, 499 P.2d 185 (1972). Restatement (Second) of Agency, § 233.

■ In the present case there was considerable evidence from which the jury could have found that Stone was acting within the scope of his employment at the time of the accident. First, the evidence shows that he was a regular employee of Ray Korte Chevrolet. Stone had been known to pick up customers on off-shift hours to try to sell them cars. This activity is commonplace for car salesmen, whose on-duty hours often do not coincide with their customers' available time for viewing or test driving cars. Stone had done business with Mr. Urban on previous occasions. He was seen making business calls in the office just prior to the accident. Mr. Urban testified that Stone had called him prior to his death and arranged to pick Urban up and bring him to the showroom. Finally, the route taken by Stone from the Ray Korte lot was the precise route one would have taken to meet Mr. Urban. This evidence, viewed in a light most favorable to sustaining the jury verdict, *Mahurin v. Schmeck, supra*, is more than sufficient.

Appellant further asks us to rule, as a matter of law, that a .41 blood alcohol level would constitute abandonment of employment by an employee. This issue is not before us for decision. While documentary evidence was admitted indicating Stone had a .41 blood alcohol level, it was certainly not unrefuted. Other scientific testimony indicated a .41 blood alcohol level would almost completely incapacitate an individual, if not kill him. Evidence was introduced that Stone seemed lucid to the last people who saw and/or spoke to him, a virtual impossibility if he had had a .41 blood alcohol level.

There was also eyewitness testimony concerning the amount of alcohol he consumed and about his drive from the Korte lot to the scene of the accident, all refuting a possible .41 blood alcohol level. From this evidence it is clear that the jury found Stone did not have a .41 blood alcohol level and had not abandoned his employment. This decision is supported by the evidence and the potential issue as to when, if ever, a certain level of alcohol in the blood stream constitutes abandonment of employment as a matter of law is not before us.

## V. MISCONDUCT OF COUNSEL

Appellant additionally contends that misconduct of appellee's attorney during trial and in closing argument was highly prejudicial and constitutes reversible error.

It is axiomatic that trial counsel is given wide latitude in argument. *State v. Williams*, 113 Ariz. 442, 556 P.2d 317 (1976); *State v. Hilliard*, 89 Ariz. 129, 359 P.2d 66 (1961). This case was hard fought and involved a number of hotly contested issues vis-a-vis the evidence which was offered and which was not offered at trial. Appellant's major complaint was that in closing argument, opposing counsel referred to appellant's failure to present a key witness, the chemist responsible for the blood alcohol test, inferring she would have further refuted the documentary evidence of an alleged .41 blood alcohol.

■ In general, this Court will defer to the trial court's ruling on alleged misconduct of counsel unless there has been a clear abuse of discretion. *Moser v. Mardian Construction Company*, 20 Ariz.App. 27, 509 P.2d 1064 (1973). The trial court witnessed all the events of the trial as they happened and therefore is a better judge of prejudice than we can be. *E. L. Jones Construction Co. v. Noland*, 105 Ariz. 446, 466 P.2d 740 (1970).

■ Additionally, in *Krek v. Briel*, 3 Ariz.App. 126, 412 P.2d 301 (1966), Division Two of this Court held: "Where a party fails to call a witness under his control, * * or where he fails to call a seemingly available witness, whose testimony he would naturally be expected to produce if it were favorable to him, it is not improper for counsel on the other side, in argument, to comment on such failure. * * * 88 C.J.S. Trial § 184 (1955), pages 362–364." Up until the last possible moment, the appellee had every right to expect that the appellant would call the witness in question. Under the circumstances the comment was fair and not prejudicial.

We have reviewed the record in this light and do not feel that it supports a holding that the trial court abused its discretion in denying the motion for a mistrial. *Moser v. Mardian Construction Company, supra.*

## VI. INSTRUCTIONS

■ Finally, appellant contends the trial court erred in refusing to give some of appellant's requested jury instructions.[2]

2. APPELLANT'S REQUESTED INSTRUCTION NO. 1
   Employment exists only during the time when the servant is performing or should perform the work he is employed to do.
   APPELLANT'S REQUESTED INSTRUCTION NO. 6
   An employer may be held responsible under the doctrine of respondeat superior only if the relationship of the master and servant existed at the time the tort was committed.
   APPELLANT'S REQUESTED INSTRUCTION NO. 10
   The employment exists only during the time when a servant is performing or should be performing the work which he is employed to do. It does not begin at the time when it is necessary for him to act in order to perform the required service. It begins only when the master has a right to direct the method by which the servant is to perform the work and terminates when the master has no longer a right to control it.
   APPELLANT'S REQUESTED INSTRUCTION NO. 12
   An employee is not within the course and scope of his employment during travel necessarily incurred in coming to or going from work.
   APPELLANT'S REQUESTED INSTRUCTION NO. 14
   Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."

We have reviewed these proposed instructions in connection with the instructions actually given by the trial judge and find that all of the essential principles set forth in the proposed instructions were given by the trial judge to the jury in other forms of instructions.[3]

In *Porterie v. Peters*, 111 Ariz. 452, 532 P.2d 514 (1975), the Arizona Supreme Court said that instructions should not be given in the form of mere abstract legal rules unless they are specifically made applicable to the issues in the case. Instructions must be measured by the facts and circumstances of the case. No party is entitled to any particular language in an instruction, even if it is correct as a matter of law. *Baker v. Atchison, Topeka and Santa Fe Railway Company*, 11 Ariz.App. 387, 464 P.2d 974 (1970). The instruction objected to, together with the other instructions given, properly instructed the jury as to the applicable law. The instructions were a fair and complete presentation of the issues and theories involved in the case. There was no error.

The judgment is affirmed.

FROEB, C. J., and HAIRE, J., concur.

---

3. *E. g.* An employer is liable to damages caused by the negligence of an employee who is acting within the scope of his employment.

It is not necessary that a specific act be authorized as such by the employer to bring it within the scope of the employee's employment. The employee is within the scope of his employment if his actions are done while he is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental [sic] to the employment.

In determining whether Mr. Stone was acting within the scope of his employment by the defendant at the time of the accident, you may take into consideration the following matters:
1. Whether Mr. Stone's conduct was one commonly done by defendant's salemen.
2. The time, place and purpose of Mr. Stone's conduct.
3. The previous relations between the defendant employer and its salesmen.
4. Whether or not the defendant had reason to expect such conduct by Mr. Stone.
5. Whether Mr. Stone was under the influence of intoxicating liquor to such an extent that he could no longer follow his employment.