818 P.2d 167

Mark Edward BLOCHER, Plaintiff/Appellant,

v.

Susan Sigret THOMPSON; Keith Thompson and Mary Thompson, husband and wife, Defendants/Appellees.

No. 2 CA–CV 90–0265.

Court of Appeals of Arizona, Division 2, Department B.

April 25, 1991.

Review Denied Nov. 5, 1991.*

* A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed July 25, 1990.

* Feldman, V.C.J., of the Supreme Court, voted to grant review.

Law Office of Jacob Leon Siken by Carl M. Tootle, Tucson, for plaintiff/appellant.

Chandler, Tullar, Udall & Redhair by Nancy M. Coomer, Tucson, for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

Plaintiff Mark Blocher appeals from the trial court's granting of summary judgment in favor of defendants Mary and Keith Thompson[1] in this negligence action arising out of a motor vehicle accident. For the reasons set forth below, we affirm.

## FACTS

Viewing the evidence in the light most favorable to appellant, *Hill–Shafer Part-*

1. On appeal, the parties do not argue that the trial court's dismissal of the claims against Susan Thompson was improper. The record indi-

*nership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990), the facts are as follows. Pedestrian Mark Blocher was injured on October 22, 1987, when he was struck by a motor vehicle driven by Susan Thompson as she executed a left-hand turn at the intersection of Speedway and Craycroft. It was raining at the time of the accident, which presented an obstacle for Susan. Susan had seen Blocher standing on an island in the middle of the intersection immediately prior to the accident. She next noticed Blocher when he stepped out into the crosswalk as she was taking advantage of a gap in the traffic to execute the left turn. She immediately applied her brakes in an unsuccessful effort to avoid the accident. She then drove the vehicle to the side of the road and walked back to assist Blocher. Susan drove Blocher to the hospital and waited there while medical treatment was rendered. When Blocher was discharged from the hospital, Susan drove him to the home of one of his friends. At the time the accident occurred, Susan was 17 years old and resided with her parents, Keith and Mary Thompson. On the night of the accident, Susan's mother was concerned about hazardous road conditions, such as flooding, and asked Susan not to go out driving. Susan ignored her mother's request, "stormed out of the house," and eventually injured Blocher.

Susan was issued a driver's license in April 1987, after successfully completing a driver's education class. She then purchased the car she was driving at the time of the accident. Susan used her own funds to purchase an insurance policy, which was issued in her name. She also paid the entire $1,000 purchase price for the car, $400 of which was earned from Susan's part-time jobs and $600 of which she received from her parents as reimbursement for modeling school expenses. Susan's father had agreed to reimburse Susan for the tuition she paid for modeling school when she completed the course. Susan then told

cates that the parties agreed, in the form of a covenant, not to sue, nor pursue any further claims against Susan.

her parents that she intended to use the $600 as partial payment on the purchase of a car. Susan admits that she could not have purchased the car without the $600 reimbursement.

Susan did not pay room and board to her parents but occasionally contributed toward her living expenses. Living with her parents enabled her to save some of her earnings from her part-time jobs. Susan's parents basically allowed her to come and go from the home as she pleased. The only restriction placed on Susan's use of the car was by her mother, who required that Susan be home "usually no later than 1:00 a.m. and that Susan's vehicle was not to be driven by anyone other than herself." Susan's father placed no restrictions on her use of the car.

Susan's parents never used Susan's car, did not possess a set of keys for the car, and did not contribute financially for gas or maintenance of the car. The only time either of Susan's parents had been passengers in the car when Susan was driving was on one occasion when Susan drove her mother home from the gas station where her mother's car was being repaired.

Susan's mother was aware of Susan's successful completion of the driver's education class and was not aware of any traffic violations prior to the accident. Both of Susan's parents felt she was a good driver. Her mother admits that had she felt Susan was a careless driver she would have prevented her from driving.

On August 3, 1988, Blocher entered into a covenant not to execute judgment against Susan in consideration of $15,000, the policy limits of Susan's motor vehicle insurance.

## PROCEDURAL HISTORY

Blocher filed a complaint against Susan Thompson on November 4, 1987, for personal injuries. On April 22, 1988, the complaint was amended to include Susan's parents, Keith and Mary Thompson. Blocher premised his claim of liability against Susan's parents on several theories, including (1) the family purpose doctrine, (2) negligent entrustment, (3) A.R.S. § 12-661, and (4) A.R.S. § 28-417(C).

On October 17, 1988, a motion for summary judgment was granted in favor of the Thompsons as to liability under A.R.S. § 28-417(C) because Susan did possess an automobile insurance policy at the time of the accident. On June 13, 1989, the first day of trial, the trial court granted the Thompsons' oral motion for summary judgment as to the family purpose doctrine, finding by minute entry "that the parents are not joint tortfeasors under the family purpose doctrine and the covenant not to execute releases them from liability under this doctrine...."

The trial was continued upon Blocher's motion in order to provide an opportunity for a special action. On June 26, 1989, Blocher filed a motion to reconsider the partial summary judgment as to the family purpose doctrine. This motion was denied and Blocher filed a special action. Jurisdiction was declined by this court in Blocher's special action proceeding.

Following this court's decision in the special action, the parties submitted a joint statement of facts and the Thompsons filed a motion for summary judgment as to theories of negligent entrustment and liability under A.R.S. § 12-661. Following oral argument, the trial court granted the motion, finding no evidence to support either of these theories.

## ISSUES

On appeal, Blocher argues that genuine issues of material fact exist which preclude summary judgment in favor of the Thompsons. Specifically, Blocher argues that the trial court erred in dismissing his claims as to (1) the applicability of the family purpose doctrine, (2) negligent entrustment, and (3) A.R.S. § 12-661.

## SUMMARY JUDGMENT

In reviewing summary judgment, this court views the evidence in the light most favorable to the party opposing the motion, and all favorable inferences fairly arising from the evidence must be given to

the opposing party. *Hill–Shafer Partnership*, 165 Ariz. at 472, 799 P.2d at 813; *Wisener v. State*, 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979). Summary judgment is appropriate where "the claim or defense ha[s] so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). The moving party must be entitled to judgment as a matter of law. *Gulf Ins. Co. v. Grisham*, 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980); *Auto–Owners Ins. Co. v. Moore*, 156 Ariz. 184, 185, 750 P.2d 1387, 1388 (App.1988).

## A. *Family Purpose Doctrine and Covenant Not to Sue*

Blocher argues that the trial court erred in dismissing his "family purpose" doctrine claim against Susan Thompson's parents because he expressly reserved his right of action against them in his settlement with Susan. He further argues that reasonable inferences from the undisputed facts support the applicability of the family purpose doctrine to this case, and that summary judgment was improperly granted.

We agree with Blocher that the covenant not to execute releases only Susan from liability and preserves any claims he might have against her parents. We hold, however, that the undisputed facts do support the trial court's granting of summary judgment in that the motor vehicle involved in the accident was not "furnished" by Susan's parents.

█ The covenant at issue in this case expressly reserves Blocher's "[r]ights of action, claims, and demands against all other firms and persons other than covenantee." In Arizona, "[c]ovenants not to sue should be construed in harmony with the intent of the parties." *Hovatter v. Shell Oil Company*, 111 Ariz. 325, 327, 529 P.2d 224, 226 (1974).

A split of authority exists on the issue of whether a document covenanting not to sue one primarily liable operates to release one whose liability is solely derivative. *Ray Korte Chevrolet v. Simmons*, 117 Ariz. 202, 204, 571 P.2d 699, 701 (App.1977); *see generally* Annots. 24 A.L.R. 4th 547 (1983); 92 A.L.R.2d 533 (1963); 20 A.L.R.2d 1044 (1951). Arizona courts, however, have generally held that such covenants release only those parties specifically mentioned in the agreement. *See Hovatter, supra; Fagerberg v. Phoenix Flour Mills Company*, 50 Ariz. 227, 71 P.2d 1022 (1937). While those cases involved instruments which contained express reservations of the covenanter's right to proceed against the covenantee's principal, we believe that the reasoning supporting those decisions equally applies to the situation where rights against the principal have not been so expressly reserved.

In *Hovatter*, our supreme court cited with approval an Illinois Court of Appeals opinion which stated:

> In our opinion it matters greatly how the servant's liability was extinguished. Where the master's liability rests solely on respondeat superior, if the servant is exonerated by trial on the merits, then, of course, the master cannot be held liable, but there is no logical or legal basis for extending the rule to situations where a servant terminates his liability by obtaining a covenant not to sue. *Holcomb v. Flavin*, 62 Ill.App.2d 245, 249, 210 N.E.2d 565, 567 (1965).

111 Ariz. at 327, 529 P.2d at 226. Thus, Arizona courts generally adopt the view that, because a covenant not to sue does not adjudicate the merits of the case, it releases only those parties specifically mentioned in the agreement. *Hovatter, supra; Fagerberg, supra; Cf. Ray Korte Chevrolet*, 117 Ariz. at 205, 571 P.2d at 702. In the case before us, only Susan was specifically mentioned in the covenant; therefore it was error for the trial court to rule on summary judgment that the covenant not to sue also extinguished any liability owed by Susan's parents.

█ To prevail against the parents, however, Blocher must demonstrate that the family purpose doctrine applies in this case. We find that the undisputed facts do not support the doctrine's application.

Under Arizona law, the following elements must be established before the family purpose doctrine will apply:

[T]here must be a family with sufficient unity so that there is a head of the family, the motor vehicle responsible for the injury must have been one "furnished" by the head of the family *to a member of the family*, and the vehicle must have been used on the occasion in question by the family member with the implied or express consent of the head of the family for a family purpose.

*Pesqueira v. Talbot*, 7 Ariz.App. 476, 480, 441 P.2d 73, 77 (1968).

While it is undisputed that a "family" exists in this case, we think the undisputed facts fail to establish that the motor vehicle was furnished to Susan by her parents. First, the facts show that Susan used her own money to purchase the car. In Arizona, "the parent 'furnishes' the motor vehicle when the parent through a substantial gift or a nonbusinesslike loan makes it possible for the child to purchase a car that the child would otherwise not have been able economically to acquire." *Id.* at 481, 441 P.2d at 78.

Susan paid $400 of the purchase price of the car with money she had saved from part-time jobs. The remaining $600 of the purchase price was reimbursement from her parents for tuition she had paid with her own funds for a modeling course. The car was not a "gift" because Susan had the option to use the $600 reimbursement for any purpose she desired. Nor can the $600 be construed as a loan since it was a reimbursement of Susan's privately owned funds. Significantly, in *Pesqueira*, the court indicated that once a loan has been repaid, "the element of 'furnishing' may cease," indicating that if a child were fully responsible for the car the family purpose doctrine would not apply. *Id.* at 481, 441 P.2d at 78; *See also Brown v. Stogsdill*, 140 Ariz. 485, 489, 682 P.2d 1152, 1156 (App.1984).

In this case, no outstanding liability exists as Susan was the sole owner of the car from the time it was purchased. The evidence is also uncontroverted that Susan obtained and maintained the car herself.

Thus, once Susan received the reimbursement for the modeling school tuition, as agreed to by her parents, she was able to purchase the car on her own. Because she was fully responsible for maintenance of the car, this arrangement does not constitute the "substantial beneficence" which is necessary to establish that her parents furnished the car. *Pesqueira*, 7 Ariz.App. at 482, 441 P.2d at 79. We hold, therefore, that summary judgment on Blocher's family purpose claim was proper.

**B.** *Negligent Entrustment*

■ Blocher next argues that the trial court erred in dismissing his negligent entrustment claim against Susan's parents. Because we have held that Susan's parents did not "furnish" her with the vehicle, the facts do not support a finding of negligent entrustment.

**C.** *A.R.S. § 12–661*

■ Finally, Blocher argues that the trial court erred in dismissing his A.R.S. § 12–661 claim. A.R.S. § 12–661 provides in pertinent part:

A. Any act of malicious or wilful misconduct of a minor which results in any injury to the person or property of another, ... shall be imputed to the parents or legal guardian having custody or control of the minor whether or not such parents or guardian could have anticipated the misconduct for all purposes of civil damages....

We find nothing in the facts before us to support the claim that Susan's actions at the time of the accident were wilful or malicious. The trial court correctly dismissed his claim with prejudice.

### CONCLUSION

The trial court properly granted summary judgment in favor of Mary and Keith Thompson. We therefore affirm.

FERNANDEZ, C.J., and LACAGNINA, J., concur.