505 P.2d 279

Steven James **PARKS**, a minor, by James N. Parks, his father and Guardian ad Litem, Appellant,

v.

Terry **ATKINSON** and Eileen H. Atkinson, husband and wife, Roman Catholic Diocese of Tucson, a corporation, and Arizona Carpenters Apprenticeship Committee, Appellees.

**No. 2 CA–CIV 1162.**

Court of Appeals of Arizona, Division 2.

Jan. 16, 1973.

Rehearing Denied Feb. 15, 1973.

Review Denied March 20, 1973.

Law Offices of Paul G. Rees, Jr., by Paul G. Rees, Jr. and Richard M. Davis, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by D. B. Udall and William J. Augustine, Tucson, for appellees Atkinson.

Mesch, Marquez & Rothschild, by John K. Mesch, Tucson, for Roman Catholic Diocese of Tucson.

Ray F. Harris, Tucson, for Arizona Carpenters Apprenticeship Committee.

HOWARD, Judge.

The plaintiff-appellant Steven Parks, an apprentice carpenter, fell from a scaffold at the site of a remodeling or reconstruction project. He brought suit against M. J. Lang Construction Company, a construction contractor working on the reconstruction project; the Roman Catholic Church of the Diocese of Tucson, the landowner; Terry Atkinson et ux., the architect; Unitruss, Inc., which fabricated the trusses used in the scaffolding; and the Arizona Carpenters Apprenticeship Committee, an organization engaged in the training and development of apprentice carpenters. Summary judgments were granted in favor of all of the parties-defendants except Unitruss, Inc. All of these judgments contained the express determination of finality pursuant to Rule 54(b), as amended, Ariz. R.Civ.P., 16 A.R.S. Appeal was taken from all such summary judgments. The appeal against M. J. Lang Construction Company was subsequently dismissed upon stipulation because a claim for Workmen's Compensation was asserted. This appeal thus challenges the summary judgment entered in favor of appellees Terry Atkinson, et ux., The Roman Catholic Church of the Diocese of Tucson, and the Arizona Carpenters Apprenticeship Committee.

The facts viewed in the light most favorable to appellant are as follows. The Roman Catholic Diocese is the owner of St. Augustine's Cathedral in Tucson, Arizona. Because of the age and condition of the structure it was decided to remodel and essentially rebuild the cathedral rather than attempt restoration. To accomplish this, the project to dismantle and rebuild the structure was granted to an independent contractor, M. J. Lang Construction Company.

After demolition was completed, construction was begun on the entire building. At the time of the injury to the plaintiff the ceiling of the cathedral was being plastered and tiled. Parks fell from a scaffolding erected so the workmen could repair the ceiling. The scaffold was designed and erected by the contractor, M. J. Lang Construction Company who had been selected by the Roman Catholic Diocese of Tucson to perform the remodeling job without competitive bidding. It was to receive in return its costs up to a certain flexible figure plus a fixed percentage of such costs as profit.

Terry Atkinson was retained as the architect by the church because of his prior extensive architectural work for the church. He was an independent contractor employed pursuant to an oral contract with the church. This contract contemplated the design and planning of the modifications and preparations of plans and specifications. It further required administration of the contract so as to determine that the construction conformed to the plans and specifications and that the finished product was in conformance with the contractual drawings and documents between the con-

**114**

tractor and the church. Atkinson had one employee on the project. It was the duty of this employee to determine that the contractor performed the work so that the contemplated project conformed to the plans and specifications as drawn by Atkinson. The combined use of scaffolding and trusses for the ceiling work was not part of the plans and specifications, but rather was the idea of the contractor, M. J. Lang Construction Company. Atkinson's employee intervened on two occasions in the construction work being performed by M. J. Lang Construction Company in order to insure conformance to the plans and specifications. These interventions involved disallowing the use of improper concrete and the cessation of concrete pouring due to wet footings.

The Arizona Carpenters Apprenticeship Committee is an organization of employers and employees organized pursuant to A.R.S. § 23-224, as amended. Its duties are to ". . . establish schedules for work experience training, assist in developing wage rates and working conditions for the apprentices, ascertain employer needs in the trade, specify the appropriate ratio of apprentices to journeymen, cooperate with school authorities in regard to education of apprentices in technical and theoretical subjects related to their trades and adjust apprenticeship differences." On June 20, 1967, the Tucson Carpenters Joint Apprenticeship Committee and the plaintiff, through the Committee, entered into agreement whereby the "employer" agreed to employ the plaintiff for the purpose of enabling him to learn and acquire the trade or craft of carpentry. The agreement further provided that the plaintiff agreed to perform diligently and faithfully the work of the trade or craft of carpentry during the period of apprenticeship and comply with the training program contained in the schedule of training which was attached to the agreement. The plaintiff, at the time of the accident, was employed by M. J. Lang Construction Company, having been sent on the job by the Carpenter's Union. We shall discuss the plaintiff's claim against each defendant separately.

## THE OWNER OF THE PREMISES

As a general rule, an owner is not liable for the negligence of an independent contractor. E. L. Jones Construction Company v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970). This rule is subject to certain exceptions. One exception is that the law will not allow one who performs work that is necessarily or inherently dangerous to escape liability to persons or property negligently injured in its performance by another to whom he has contracted such work. S. A. Gerrard Company, Inc. v. Fricker, 42 Ariz. 503, 27 P.2d 678 (1933). Another exception is that one who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for bodily harm to others for whose safety the employer owes the duty to exercise reasonable care, which is caused by his failure to exercise his control with such reasonable care. Welker v. Kennecott Copper Company, 1 Ariz.App. 395, 403 P.2d 330 (1965).

Plaintiff claims that in addition to the above exceptions, liability should also be imposed under §§ 413, 416, 422 and 427, Restatement (Second) Torts. In Welker v. Kennecott Copper Company, supra, we held that the duties outlined in the foregoing sections of the Restatement of Torts are not owed to employees of an independent contractor. We see no reason not to adhere to our decision in *Welker.*

On the issue of retained control, plaintiff points out that the written agreemen between Lang and the church dated March 15, 1967, set a fee to be paid to the contractor in the sum of $650,961, exclusive of bond, including a contractor's fee of $30,900. The contract also allowed certain items for stained glass, cast stone, an organ, finished hardware, etc. The agreement stated:

*"At the owner's option, changes to the plans may be made to reduce or increase the contract amount."* (Emphasis added.)

Plaintiff claims that this is the type of control that was found in Welker v. Kenne-

cott, supra, to provide a sufficient basis for landowner liability. We do not agree. Under the contract in *Welker*, no important employee could have been employed without the owner's approval; the salaries to be paid to all key employees were subject to the owner's approval; the owner could discharge any employee on the job; and no drawing detailing how the work was to be performed could be released to the field without prior approval by the owner.

No analogy can be drawn between the retained controls in *Welker* and the contractual provisions to which plaintiff alludes. The retained supervisory controls must give the owner control over the method or manner of performing the details of the work, over and above the supervision and inspection rights generally reserved to insure that the results conform to the specifications and requirements of the construction contract. German v. Mountain States Telephone & Telegraph Company, 11 Ariz. App. 91, 462 P.2d 108 (1970); Reber v. Chandler High School District # 202, 13 Ariz.App. 133, 474 P.2d 852 (1970). There is no evidence in this case that there was such retained control.

## THE ARCHITECT

Plaintiff sets forth fourteen reasons why summary judgment should not have been granted as to the architect. We have examined all of these reasons and find none sufficient to withstand a motion for summary judgment. The liability of an architect was discussed in Reber v. Chandler High School District # 202, supra. That case held that before a supervising architect can be held liable to the employee of an independent contractor, it must first be found that the architect had the duty to supervise the method and manner of actually doing the work. If the architect's supervisory controls are only those controls necessary to assure that the results of the contractor's work comply in technical detail with the plans and specifications prepared by the architect, and the architect has no duty to supervise the procedures to be utilized to achieve the result, he cannot be liable. Reber v. Chandler High School District # 202, supra.

Plaintiff claims that since the contract between the architect and the church was oral, rather than in writing, the *Reber* case does not apply and a jury would be entitled to infer that the architect had control of the actual method of the daily work which was to be done. We do not believe that the fact that the contract was oral carries any weight. Since we deal with a motion for summary judgment, it was incumbent upon plaintiff to make a showing of available evidence he would produce at trial from which one could infer retained control. He failed to make such a showing. Plaintiff claims that a jury could infer that the architect had actual control over the method of doing the work from the fact that its employee stopped the work twice. We do not agree. Both instances show that the interruptions were solely to insure that the work was being done in accordance with the plans and specifications and concerned with the ultimate structural safety of the building. Plaintiff cannot parlay these two instances into a jury question as to whether the architect had the duty or had undertaken the duty to control the contractor and his employees in the method and manner of performing the details of the construction.

Plaintiff also contends that the deposition of Bishop Francis Joseph Green raises a jury question as to the agreement between the architect and the church. The portion of the deposition relied upon is as follows:

"Q. [By Mr. Rees.] And although you personally were concerned only with the esthetic results and the sturdiness and strength of the building, I take it you expected either Terry [the architect] or Mr. Aros [an employee of the architect] or someone for whom you were paying this additional percentage to see to the mechanics of a safe and proper job over there—would that be a fair statement?

A. It would be. However, I suppose I took for granted that this was the re-

sponsibility of the contractor and the architect combined·on that. I certainly in no way ever envisioned that I was in anyway responsible for the safety of any of the men that were working on the building."

We do not believe the above quoted testimony as to Bishop Green's assumption or expectations can be fairly elevated to a jury question as to whether the church and the architect .agreed that the architect was to be responsible for the safety of the workers on the job site. At most, it is a disclaimer by Bishop Green for any responsibility on the part of the church for job safety.

█ Lastly, plaintiff claims that the architect undertook the responsibility for safety of the workers by filling out a daily log. We do not agree. The daily log was requested by the City of Tucson. The architect, in his deposition, explained the purpose of the log as follows:

"A. Under City code in effect at that time the City Inspector, Building Inspector has the right to request that there be a continuous inspection of the entire job or any particular phase of the job that he feels might be an unusual situation. This was requested by the City in this particular job. We objected on behalf of the client that the cost of such an inspection would be greater than the fee that was to be paid to the architect so the City Inspection Department agreed that if we kept a daily log and transmitted that daily log to them, that that would satisfy them as far as the project is concerned and that they agreed that there was not a particular hazardous or particularly difficult construction situation. They were talking about, primarily in this instance, the design and the fact of whether the steel is erected properly for the final result of the project. In other words, their motives are the same as ours.

Q. To have a sound, safe, ultimate result?

A. That is right."

## THE COMMITTEE

Plaintiff's theory of recovery against this defendant is set forth in the complaint as follows: (1)· That it was the employer of the plaintiff and was negligent in furnishing him with a dangerous device which was defective and failed to warn him of a dangerous condition; (2) that it breached a statutory duty of insuring safe working conditions for him; and (3) that it was contractually obligated to protect plaintiff's safety.

█ The apprenticeship agreement signed by plaintiff as an "apprentice" was entered into between him and the Tuscon Carpenters Joint Apprenticeship Committee. In this agreement the Tucson Carpenters Joint Apprenticeship Committee acts as the agent for M. J. Lang Construction Company. Parks testified in his deposition that his employer was M. J. Lang Construction Company which paid his wages, paid his social security, could fire him, could tell him what to do and how to do his job. Furthermore, the depositions showed that the Tucson Carpenters Joint Apprenticeship Committee did not have the authority to tell the employee how to perform his job, did not pay Parks any wages, and did not employ him. In short, there was no evidence that Parks was the employee of this defendant. The only authority which this defendant had over the plaintiff is contained in paragraph 5 of the apprenticeship agreement. This paragraph provides that should the employer become unable to fulfill the provisions of the agreement, or by mutual consent to provide greater diversity of training or continuity of employment, the local joint apprenticeship committee was authorized to transfer the apprentice to another job. We are unable to find in the agreement any right of control by this defendant over the manner in which Parks was to execute his work.

█ Plaintiff claims that this defendant has a statutory duty to him with respect to his safety that would impose liability. This is based on A.R.S. § 23-224, subsec. B, as amended, which imposes upon

the committee the duty to assist in developing working conditions for apprentices and specify the appropriate ratio of apprentices to journeymen. We do not agree with this contention. We do not find that this statutory obligation makes the committee liable for hazardous safety conditions on job sites, nor does it impose on it an obligation to see that all job sites meet safety standards.

Plaintiff points to the committee's authority to require him to wear overalls on the job as an indicium of control of safety standards on the job. A witness for the committee pointed out in deposition that the committee, as part of its training program requires an apprentice to report to a job with the tools of his trade and overalls are considered part of the requirement. We do not believe this requirement can be equated to control of on-the-job safety.

The trial court did not err in granting summary judgment in favor of these defendants.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.