695 P.2d 270

Theo DeMONTINEY, surviving parent of Bobby Alcaida, deceased, Plaintiff-Appellant,

v.

DESERT MANOR CONVALESCENT CENTER, INC., an Arizona corporation; George M. O'Brien, M.D.; Yuma County, a political subdivision of the State of Arizona; and Health Systems Research Institute, a Utah corporation, Defendants-Appellees.

No. 1 CA–CIV 5903.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 14, 1984.

Sorenson, Moore, Benham, Garrett & Julian by J. William Moore, Phoenix, for plaintiff-appellant.

Crampton, Woods, Broening & Oberg by Donald P. Crampton, Phoenix, for defendant-appellee Yuma County.

Gallagher & Kennedy by Michael K. Kennedy, Phoenix, for defendant-appellee Desert Manor Convalescent Center, Inc.

Weyl, Guyer, MacBan & Olson by Thomas G. Bakker, Phoenix, for defendant-appellee George M. O'Brien, M.D.

## OPINION

EUBANK, Judge.

This is an appeal from the trial court's denial of plaintiff-appellant's motion for a new trial in a wrongful death action, which resulted from decedent's suicide. The relevant facts are not in dispute.

On June 7, 1978, appellant's son, Bobby Alcaida, committed suicide while held at appellee Desert Manor Convalescent Center's (Desert Manor) health care facility located in Yuma, Arizona. The decedent had unsuccessfully attempted suicide the previous day in Parker, Arizona and was taken into custody by Parker police, who later transferred him to the Yuma County Sheriff's Department. Deputy Sheriff Buddy McCall brought decedent to Desert Manor on the evening of June 6, 1978. At Desert Manor, decedent was examined by appellee Dr. George O'Brien, an employee

of appellee Health Systems Research Institute (HSRI), which had contracted with appellee Yuma County to provide physicians' services to the county. Decedent was ordered admitted as a mental hold patient for emergency detention by Dr. O'Brien, who signed the admission form as Admitting Officer of the Yuma County Health Department.

Desert Manor's security area consisted of three specially designated patient rooms, only one of which contained an exposed pipe in the ceiling. The record shows that after examining the decedent, Dr. O'Brien decided that the decedent was no longer suicidal, ordered him to be placed in the room with the exposed pipe, and issued him bed linens and a gown. Deputy Sheriff McCall then locked decedent in the room, where he remained until he was found dead by hanging the following evening. Following his death, the appellant, Theo DeMontiney, mother of the deceased, instituted this wrongful death action in the superior court against Desert Manor, Dr. O'Brien, Yuma County and HSRI. Appellant's medical malpractice claims against Desert Manor, Dr. O'Brien and HSRI were presented to a Medical Liability Review Panel, pursuant to A.R.S. § 12–567, which found in favor of the defendants. After that decision, venue of the case was transferred to the Maricopa County Superior Court and went to trial there.

Following the jury trial but prior to instructing the jury, the judge granted Yuma County's motion for a directed verdict and dismissed it from the action. He also directed a verdict in favor of Dr. O'Brien and Desert Manor on the issue of punitive damages. The remaining issues went to the jury. After the jury returned its defense verdicts, judgment was entered, and this appeal followed.

Appellant presents several issues for our review. Restating them for our convenience, they are:

1. Did the trial court err in directing a verdict in favor of Yuma County?

2. Did the trial court err in refusing or modifying several of plaintiff's requested jury instructions?

3. Did the trial court err in admitting into evidence the Medical Liability Review Panel decision as to Desert Manor?

4. Did the trial court err in excluding evidence of the non-licensure of Desert Manor's security area and evidence of violation of statutes applicable to licensed nursing homes?

5. Did the trial court err in denying plaintiff's motion for leave to file amendments to the amended complaint?

6. Did the trial court err in directing a verdict on the issue of punitive damages?

7. Were the jury verdict and judgment entered by the court contrary to law and against the weight of the evidence?

8. Did the trial court err in denying plaintiff's objections to Desert Manor's Statement of Costs and Notice of Taxation of Costs pertaining to travel expenses?

After considering the record and the law, we affirm the trial court's judgment.

## I. YUMA COUNTY

We first address the issue of whether the trial court erred in directing a verdict in favor of Yuma County. The trial court found as a matter of law that Yuma County had delegated by contract any duties it owed decedent to HSRI and that therefore any acts committed by Dr. O'Brien were not committed as an agent or employee of Yuma County, but instead were committed in his capacity as an employee of HSRI, an independent contractor.

■ In reviewing the granting of a motion for directed verdict, we review the evidence to determine whether reasonable minds could differ as to the inferences to be drawn from the evidence. *Adroit Supply Co. v. Electric Mutual Liability Ins. Co.*, 112 Ariz. 385, 390, 542 P.2d 810, 815 (1975). While the question of whether an employment relationship is one of master

and servant or principal and independent contractor is generally one of fact for the jury, *see Arizona-Hercules Copper Co. v. Crenshaw*, 21 Ariz. 15, 184 P. 996 (1919), where the evidence is clear and uncontradicted the question is one of law and should be decided by the court. *Williams v. Wise*, 106 Ariz. 335, 338, 476 P.2d 145, 148 (1970).

Appellant urges that Yuma County had a statutorily imposed nondelegable duty to provide proper treatment to patients admitted to state facilities for emergency evaluation. Appellees answer that Yuma County, by contract, delegated whatever duties it may have had.

We begin by examining the statutes which require Yuma County to provide emergency evaluation services. A.R.S. § 36–545.06 provides that:

A. Each county, or any combination of counties, shall provide *directly or by contract* the services of a screening agency and an evaluation agency for the purposes of this chapter.

B. Upon a request made by a resident of the county pursuant to this chapter, a county shall be required to provide screening or evaluation.

(Emphasis added). A.R.S. § 36–545.07(A) further provides that:

A. *The department may enter into contracts* with screening agencies, evaluation agencies and mental health treatment agencies to provide prepetition screenings, court-ordered evaluations, voluntary evaluations, treatment of voluntary patients and treatment of patients under the provisions of § 36–524 regardless of the ability of the patient or proposed patient to pay. *A county may be a party to a contract as a provider of services or as a party making payments to an agency to provide services on the part of the county.* The state hospital may be included in the contract as a provider of services and may receive consideration not inconsistent with law.

(Emphasis added).

We find the legislative intent clear that, while a county must provide for emergency evaluation services, it may do so *either* by providing the services itself, or by contracting with another qualified party to provide such services for it. By its very language as expressed in the statute, the legislature intended that the county's duty to provide evaluation services be delegable. Thus, where a statute contains clear and unambiguous language, it is to be given that meaning unless impossible or absurd consequences will result. *Balestrieri v. Hartford Accident & Indemnity Insurance Co.*, 112 Ariz. 160, 540 P.2d 126 (1975).

Having decided that Yuma County had the statutory authority to delegate its duty to provide an evaluation agency, we now decide whether it did in fact do so. Yuma County argues that it contracted away any duties it owed to decedent through three separate contracts with private organizations.

The first contract, dated October 4, 1976 with Desert Manor, provides for the furnishing to the County of the three security rooms used for mental hold patients, and also for the furnishing of nursing, dietary and housekeeping services to those rooms. It further provides that Yuma County retains "professional and legal responsibility for patients confined in said maximum security section."

The second contract, dated August 1, 1977 with HSRI, provides for medical care. Dr. O'Brien's employer, HSRI, explicitly agreed to provide three full-time M.D.s to deliver medical care to mental hold patients. The contract further provides that:

d. Supervision and job performance of the employees will remain with HSRI. Employment of personnel to fill new or vacated positions will also be the responsibility of HSRI.

We find this clause persuasive. It provides that the medical care of decedent at the time of his death was the responsibility of HSRI, and not the responsibility of Yuma County.

The third contract, dated November 4, 1974, is with Yuma Guidance Clinic, which is not a party to this action. The contract

is nonetheless significant because it shows that Yuma County exercised its statutory option and delegated its statutory duties to provide mental health screening services and evaluation agencies to Yuma Guidance Clinic (the "Second Party"):

    1. The Second Party agrees to act as the Yuma County Mental Health Screening Agency to provide mental health pre-petition screening upon application for court ordered evaluation as contemplated in A.R.S. 36–501(21), 36–541 and 36–542. The pre-petition screening examination will be conducted at the screening agency or at the home of the person to be evaluated, to be determined according to A.R.S. 36–541 B and C.

It is well established that the chief characteristic distinguishing an independent contractor from an employee is his *right,* independent of his employer, to control the manner and means of accomplishing the particular job. *Hovatter v. Shell Oil Company,* 111 Ariz. 325, 529 P.2d 224 (1974); *Lundy v. Prescott Valley Inc.,* 110 Ariz. 362, 519 P.2d 61 (1974). We find that HSRI, by the terms of its contract with Yuma County, had the right to control the means of providing medical care to mental hold patients, and was an independent contractor in delivering that care. Dr. O'Brien was an employee of the independent contractor, under the terms of HSRI's contract with Yuma County, and was acting on behalf of HSRI with respect to the decedent.

While an employer is generally not liable for the torts of an independent contractor, *Parks v. Atkinson,* 19 Ariz.App. 111, 505 P.2d 279 (1973); *Chesin Construction Co. v. Epstein,* 8 Ariz.App. 312, 446 P.2d 11 (1968), several exceptions exist, some of which provide the basis for appellant's further arguments.

Appellant cites *Restatement (Second) of Torts* § 424 in support of his argument that Yuma County's statutory duty to provide safety services is non-delegable. Section 424 provides that a principal who is under a statutory duty to provide safeguards for another's protection is liable for the failure of a contractor employed by him to provide such safeguards. We observe that while Arizona courts will apply the Restatement (Second) of Torts in the absence of authority to the contrary, *Sullins v. Third and Catalina, Etc.,* 124 Ariz. 114, 117, 602 P.2d 495, 498 (App.1979), here the legislature has clearly provided, in A.R.S. §§ 36–545.06, .07, that Yuma County's duty is delegable. Thus § 424 of the Restatement is not applicable.

Appellant next argues that since Dr. O'Brien acted as the admitting physician for the Yuma County Health Department when admitting the decedent, he was acting as an employee of Yuma County. Appellant reasons that, while Dr. O'Brien may have been an employee of HSRI when he admitted decedent, he was also acting as an agent of Yuma County and therefore Yuma County was liable for his actions under the doctrine of respondeat superior. Appellant also argues, as another basis for Yuma County's liability, that the County Sheriff's Department retained custody over the decedent at all times while he was at the Desert Manor facility.

We find no merit in these arguments. First, Yuma County's contract with HSRI encompasses precisely those functions—delivering medical care to mental hold patients—performed by Dr. O'Brien when he examined and admitted the decedent to Desert Manor. His signature as Admitting Officer of the Yuma County Health Department is not dispositive of the issues since signs and emblems are by no means conclusive in determining if a master-servant relationship exists. *See Hovatter, supra,* 111 Ariz. at 328, 529 P.2d at 227. Further, the written contract with HSRI contains no provision for retained control by Yuma County; indeed, it provides for just the opposite, and retained control is an important factor in determining if Yuma County was an employer. *See Chesin Construction Co., supra,* 8 Ariz. App. at 314, 446 P.2d at 13. The record shows that Dr. O'Brien was employed and paid by HSRI and it contains no evidence that he was on the county payroll or was a

county employee during the event involved herein.

██ Second, we find that the Yuma County Sheriff's Department did not retain custody of the decedent. The record establishes to our satisfaction that Dr. O'Brien and HSRI had custody of decedent at the time of his suicide.

██ Appellant next argues, relying upon *Restatement (Second) of Torts* § 411, that had she been permitted to introduce evidence of Desert Manor's non-licensure,[1] that the evidence would have supported a theory of liability against Yuma County for negligently selecting an independent contractor sufficient to create a jury question. We agree with appellee Yuma County that Desert Manor's nonlicensure of the three security rooms is irrelevant as its contract duties did not involve a risk of physical harm if breached as specified by § 411 of the Restatement. At best the nonlicensure is merely a breach of Desert Manor's contract with Yuma County and bears no relevance either to any negligent hiring of personnel or to decedent's suicide. The issue presented to the jury was whether the appellees, or any one of them, violated the standard of care by placing the deceased in the particular room, given the particular circumstances.

██ Further, since the jury did not find either of the independent contractors or their agents liable for decedent's death, the county certainly cannot be found liable for negligently selecting them.

After reviewing the evidence, we conclude that reasonable minds could not differ, and that the trial court properly dismissed Yuma County from the action. *Adroit Supply Co., supra.*

## II. INSTRUCTIONS

Appellant contends that the trial court committed reversible error in refusing to give her requested instructions numbered 7, 21, 26 and 27, and in modifying her requested instruction number 24.

A. *Requested Instruction No. 7:* Appellant requested the following instruction:

You are instructed that if those charged with the care and treatment of a mentally-disturbed patient knew of facts from which they could reasonably conclude that the patient would be likely to harm himself in the absence of preclusive measures, then they must use reasonable care under the circumstances to prevent such harm.

Appellant argues that this instruction is a verbatim quote taken from *Meier v. Ross General Hospital,* 71 Cal.Rptr. 903, 69 Cal.2d 420, 445 P.2d 519 (1968), discussed by James A. Howell in *Civil Liability for Suicide: An Analysis of the Causation Issue,* 1978 Ariz.St.L.J. 573, 581, and required to be given by *Maricopa County v. Cowart,* 106 Ariz. 69, 471 P.2d 265 (1970).

██ In our opinion it was not error for the trial judge to refuse to give this instruction for the following reasons. First, *Cowart* does not require it. The instructions required by *Cowart* regarding the standard of care required of Dr. O'Brien, and of Nurse Bauguss (who was the employee of Desert Manor), were given, and they were, in most part, appellant's requested instructions. Second, appellant was not precluded from arguing to the jury the theory of negligence embraced by Requested Instruction 7, and the record shows that counsel did so argue. Third, this requested instruction is covered by other instructions given the jury, in particular, the *Cowart* instructions. Finally, the instructions given relating to the applicable standard of care conform with our opinion in *Faris v. Doctors Hospital, Inc.,* 18 Ariz. App. 264, 501 P.2d 440 (1972).

B. *Requested Instruction No. 21:* Appellant requested that the jury be instructed as follows:

You are instructed that an institution has a duty to provide a reasonably safe building for persons in its custody.

1. Desert Manor's three-room security area was not licensed by the Arizona Department of Health; the rest of the facility, however, was licensed.

■ Although this is a correct statement of law, it would have been error for the trial judge to have so instructed the jury because it is misleading under the circumstances of this case. As discussed above, the contracts between Yuma County and HSRI placed control of the hold patient in Dr. O'Brien and his employer HSRI. The instruction obviously relates to Desert Manor. The trial judge properly rejected this instruction because "the building didn't hurt the kid."

C. *Requested Instructions 26 and 27:* Both of these requested instructions are negligence per se instructions directed against Desert Manor for not having the patient hold rooms licensed by the State Health Department, pursuant to A.R.S. §§ 36–407(A), 36–430, and for not complying with certain regulations of the Department then in effect, namely: R9–10–714(C)(D) and (F), R9–10–737(B)(1)(3), R9–10–713(19), and R9–10–719(B)(3)(G) (all repealed eff. October 20, 1982 (Supp. 82–5)).

■ Under the circumstances, it would have been error for the trial judge to give the jury these instructions. Either instruction would have been misleading since control of the hold patient was in Dr. O'Brien and his employer HSRI and not in Desert Manor.

■ D. *Modified Instruction No. 24:* Appellant complains that the trial judge erred in modifying her requested instruction on damages by striking a portion of the first paragraph. We disagree. The trial court merely brought the requested instruction into line with the *R.A.J.I. Negl. 10, Measure of Damages,* instruction. There was no error.

■ E. *Conclusion:* The record does not contain the transcript of the trial court's instruction of the jury. It does, however, contain the instructions given. We have reviewed those instructions and in our opinion the court fairly instructed the jury regarding the applicable law under the facts of this case.

## III. MEDICAL REVIEW PANEL'S DECISION

■ Appellant next urges that the trial court erred in admitting into evidence the decision of the Medical Liability Review Panel (Panel) as to Desert Manor. We find appellant's argument unconvincing for the following reasons: (1) Desert Manor's nonlicensure of the three holding rooms did not contribute to the decedent's suicide and therefore Desert Manor was not negligent on a theory independent of respondeat superior; (2) the medical malpractice statutes were applicable to this action because Nurse Bauguss was a "licensed health care provider" within the meaning of A.R.S. § 12–561, and therefore the case was properly submitted to the Panel; (3) Former A.R.S. § 12–567(M) expressly provided, and present A.R.S. § 12–567(K) expressly provides, that the Panel's decision "may be admitted into evidence in any subsequent trial." We find no error, and conclude that the Panel's decision was properly given to the jury.

## IV. NONLICENSURE OF THE THREE HOLD ROOMS

■ We next reject appellant's argument that evidence of Desert Manor's nonlicensure of the three hold rooms was improperly excluded. As noted above, even if Desert Manor was operating a health care facility within the meaning of A.R.S. § 36–430, such nonlicensure was not negligence *per se* because it was not the proximate cause of the decedent's death. *Kauffman v. Schroeder,* 116 Ariz. 104, 106, 568 P.2d 411, 413 (1977), *quoting Sisk v. Ball,* 91 Ariz. 239, 242, 371 P.2d 594, 595–96 (1962); *cf. Mutz v. Lucero,* 90 Ariz. 38, 41, 365 P.2d 49, 51 (1961).

## V. DENIAL OF MOTION TO AMEND

■ Appellant argues that its proposed amendments to the amended complaint concerning the nonlicensure were erroneously denied. Irrespective of our finding that the evidence of nonlicensure was inadmissible, we will not disturb the trial court's exercise of discretion on these facts. *Mat-*

*ter of Estate of Torstenson,* 125 Ariz. 373, 376, 609 P.2d 1073, 1076 (App.1980).

## VI. PUNITIVE DAMAGES

■■■ Appellant contends that the trial court erred in directing a verdict on the punitive damages issue. We can find no evidence of wanton, willful or reprehensible conduct in the record which would have warranted the trial court sending the issue of punitive damages to the jury, and we agree with the trial court that as a matter of law Desert Manor and Dr. O'Brien were entitled to a directed verdict on this issue. At its worst, appellees' conduct fell far short of being either willful or malicious. *See Salt River Valley Water Users' Assn. v. Giglio,* 113 Ariz. 190, 202, 549 P.2d 162, 174 (1976).

## VII. VERDICT AND JUDGMENT

■■■ Our review of the record also indicates that the jury verdict and the judgment were justified and supported by the evidence. Absent a clear abuse of discretion, we will not disturb the trial court's denial of a motion for a new trial. *Adroit Supply Co., supra,* 112 Ariz. at 389, 542 P.2d at 814.

## VIII. STATEMENT OF COSTS

■■■ Finally, we find that the trial court properly denied appellant's objections to Desert Manor's statement of costs and notice of taxation of costs pertaining to travel expenses. Reasonable and necessary travel expenses incurred for the taking of depositions are allowable costs under A.R.S. § 12–332(A). *Fowler v. Great American Ins. Co.,* 124 Ariz. 111, 602 P.2d 492 (App.1979). The trial court here determined that travel expenses incurred in traveling from Phoenix to Yuma to attend depositions were reasonable and necessary, and on appeal we shall not disturb the trial court's exercise of its discretion absent a showing of clear abuse. *Id.*

For the above reasons, the judgment is affirmed.

FROEB, J., concurs.

MEYERSON, Judge, dissenting:

Because I believe that the majority opinion is in error with respect to two crucial issues presented in this appeal, I dissent.

First, the majority affirms the directed verdict granted in favor of Yuma County. In so doing, I believe that the majority misinterprets A.R.S. § 36–545.06. Subsection (A) provides:

Each county, or any combination of counties, shall provide directly or by contract the services of a screening agency and an evaluation agency for the purposes of this chapter.

The majority states that "[w]e find the legislative intent clear that, while a county must provide for emergency evaluation services it may do so *either* by providing the services itself, or by contracting with another qualified party to provide such services for it." Implicitly, the majority necessarily concedes that the duty to provide for emergency evaluation services rests with the county. Indeed, the statute expressly provides that each county "shall provide" the necessary services. The county may fulfill its obligations either by providing the services directly or by contracting for such services. Regardless of how the services are delivered, I believe the ultimate legal obligation to provide the services rests with the county.

If this is the correct reading of the statute, then *Restatement* § 424 is directly applicable. It provides:

One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

The *Restatement* would apply whenever a statute imposes a duty upon one to provide "safeguards or precautions" for the safety of others. The specific safeguards and precautions owed to a person such as the

decedent are contained in A.R.S. § 36–530 (1974).*

A person admitted to an evaluation agency shall receive an evaluation as soon as possible after the court's order for evaluation and receive care and treatment as required by his condition for the full period that he is being evaluated.

Because the county has a duty to provide the services of an evaluation agency, it thus had the duty to provide for the decedent's "care and treatment ... required by his condition." Although the delivery of evaluation services may be done by a contracting agency, the legal duty to insure that appropriate care and treatment are given remains with the county.

This is not a case in which the basis of the county's liability was solely derivative from the acts of its contracting agencies. Appellant contended below that Yuma County was actively and independently negligent. The deceased was taken to and confined in a room at Desert Manor by a deputy sheriff. During his entire stay no one entered his room other than a deputy sheriff; in fact, no one could enter the room without the permission and presence of a deputy. Although the deceased was ordered to be released from the detention room by late morning on June 7, 1978, he remained in custody and locked in the room until he was pronounced dead that evening.

The majority's analysis of the contracts between the county, HSRI, Desert Manor and Yuma County Guidance Clinic is not persuasive. The county contracted with Desert Manor for, among other things, "isolation facilities and space for maximum security." The decedent was placed in such isolation facilities. The majority candidly points out that this contract expressly states that it is "agreed and understood between the parties that professional and legal responsibility for patients confined in said maximum security section shall be the responsibility" of Yuma County and that Desert Manor "shall provide only nursing service, dietary service and housekeeping within said facility." Thus, even if the statute were construed to mean that the county could delegate its duties, the contract between the county and Desert Manor expressly reserves for the county the "professional and legal responsibility" for patients confined in the isolation facilities. With the county removed from the case, the plaintiff was placed at a serious disadvantage in presenting its case against Desert Manor to the jury because the jury could have understandably concluded that Desert Manor's responsibility was contractually limited to services unrelated to the statutory duty to provide for the deceased's "care and treatment."

The majority finds "persuasive" a provision in the contract between the county and HSRI. In that contract, HSRI agreed to "deliver medical care" to "mental hold" patients. The provision relied upon by the majority states that "[s]upervision and job performance of the employees will remain with HSRI. Employment of personnel to fill new or vacated positions will also be the responsibility of HSRI." The majority concludes that this provision means that the medical care of the decedent at the time of his death was the responsibility of HSRI and not the responsibility of Yuma County. But the majority is using the word "responsibility" in a very loose sense. Although under the contract HSRI had the responsibility to provide medical services, there is nothing in the contract to suggest that the legal obligation or duty to provide medical services in any way was shifted from the county to HSRI. Thus, in my opinion, the contract language relied upon by the majority fails to support its position.

The second error made by the majority is directly related to its decision affirming the directed verdict in favor of Yuma County. The majority upholds the trial court's refusal to give appellant's requested Instruction No. 7. That instruction provides:

---

* This subsection has subsequently been slightly amended. Laws 1979, ch. 64, § 28. The substance of this provision, however, remains the same.

You are instructed that if those charged with the care and treatment of a mentally-disturbed patient knew of facts from which they could reasonably conclude that the patient would be likely to harm himself in the absence of preclusive measures, then they must use reasonable care under the circumstances to prevent such harm.

The majority says that this instruction is not required under *Maricopa County v. Cowart*, 106 Ariz. 69, 471 P.2d 265 (1970). Although the instruction is not required under *Cowart*, it is at least suggested by *Cowart*. The majority does not state that the foregoing is an incorrect statement of law. Indeed, the instruction is taken verbatim from *Meier v. Ross General Hospital*, 71 Cal.Rptr. 903, 906–07, 69 Cal.2d 420, 424, 445 P.2d 519, 522–23 (1968). *See generally*, Comment, *Civil Liability for Suicide: An Analysis of the Causation Issue*, 1978 Ariz.St.L.J. 573.

Without pointing to other instructions, the majority suggests that the gist of appellant's instruction was covered by others. But the other instructions only concern general negligence and malpractice. No instruction set forth a specific duty of care owed to a suicidal patient. The defendants argued to the jury that if someone has made up his mind to take his own life there is nothing that anyone can do to stop him. Clearly, unless the jury was instructed that those having the responsibility and care for a suicidal patient had a specific duty to prevent him from taking his own life, the jury could have simply concluded that the prevention of suicide is outside of and beyond the scope of the general standard of nursing and medical practice. The core question of whether the defendants owed the deceased the specific obligation to prevent him from taking his own life was an issue central to appellant's case and the trial court's refusal to give such instruction deprived appellant of a substantial and important right.

For the foregoing reasons, I dissent.