784 P.2d 699

**FT. LOWELL–NSS LIMITED PARTNERSHIP, Petitioner,**

v.

**The Honorable John F. KELLY, a Judge for the Superior Court of the State of Arizona, County of Pima, Respondent,**

and

**Josephine JULA and Michael Jula, wife and husband, Real Parties in Interest.**

No. 2 CA–SA 89–0071.

Court of Appeals of Arizona, Division 2, Department B.

July 31, 1989.

Review Granted Jan. 9, 1990.

Molloy, Jones & Donahue, P.C. by Ardner R. Cheshire, Jr. and David J. Diamond, Tucson, for petitioner.

Rabinovitz & Associates, P.C. by Bernard I. Rabinovitz, Tucson, for real parties in interest.

## OPINION

LACAGNINA, Judge.

This special action was taken from an order of the respondent court denying defendant/petitioner Ft. Lowell–NSS Limited Partnership's motion for summary judgment. We accept jurisdiction because the claims of the parties raise novel and important issues which we believe require resolution by this court.

Petitioner is the owner of a self-storage facility located in Tucson. The project was developed by National Self Storage Management, Inc. (NSS), under an agreement with petitioner. The general contractor on the project was Hatfield & Associates, Inc., which in turn subcontracted with Glebe Electric to install conduit and electrical wiring and fixtures in accordance with plans provided by the architect.

Access to the facility is obtained by entering a code into an electronic security system touch pad which was installed by Glebe. On April 3, 1985, plaintiff/real party in interest Josephine Jula (Jula), an employee of petitioner, was demonstrating the system to a new tenant when she received an electric shock and resulting injuries. She subsequently brought suit against NSS and others seeking damages. Her complaint was later amended to add petitioner as a defendant.[1]

Petitioner filed a motion for summary judgment, arguing that its duty as a landowner was to maintain the premises in a reasonably safe condition and to give warning of latent or concealed perils. Presenting evidence that it had no knowledge that the security system was defective or that it had ever injured anyone prior to Jula's

---

1. This court recently affirmed the trial court's granting of summary judgment in favor of NSS, holding that Jula had failed to show that this defendant had any responsibility in connection with the electronic security system that caused Jula's injuries. *Jula v. National Self Storage Development, Inc.*, 2 CA–CV 88–0291 (Memorandum decision, filed April 4, 1989).

incident, petitioner argued that it was not liable for her injuries. The trial court denied the motion, finding that there were facts from which "it could be inferred that [petitioner] should have known of the hazardous condition alleged to have caused Plaintiff's injuries" and that "[a]ny information which Glebe Electric had, or any knowledge it should have had, would be imputed to [petitioner]," citing *Glowacki v. A.J. Bayless Markets, Inc.*, 76 Ariz. 295, 263 P.2d 799 (1953), and Restatement (Second) of Agency § 277 (1965).

Petitioner then filed a motion for reconsideration, arguing that Glebe was an independent contractor and that there was no agency relationship between them. The court denied the motion, finding that Glebe was both an independent contractor and an agent of petitioner. Noting the general rule that "a person who employs an independent contractor is not vicariously liable," the court nevertheless appears to have found two exceptions applicable to this case, neither of which had been raised by Jula. The first was a landowner's nondelegable duty to keep his premises reasonably safe for business invitees. The second was where the work to be done by the independent contractor is inherently dangerous. Finding that "[a]ny work involving electric wiring is necessarily or inherently dangerous," the court concluded:

> THE COURT FINDS that where a developer/property owner hires general contractors who hire subcontractors to construct improvements in a case such as this, that any negligence of the contractors is imputed to the developer/property owner on the basis of the non-delegable duty exception.

This special action followed.

The "general" rule has often been stated that an employer is not liable for the negligence of an independent contractor. *E.L. Jones Const. Co. v. Noland*, 105 Ariz. 446, 466 P.2d 740 (1970); *Parks v. Atkinson*, 19 Ariz.App. 111, 505 P.2d 279 (1973); Restatement (Second) of Torts § 409 (1965). This rule is now so riddled with exceptions that its continuing validity has been called into question. W. Prosser, *The Law of Torts* § 71 at 509 (5th ed. 1984). Two exceptions pertaining to the nondelegable duties of a landowner and an employer of an independent contractor are presented here.

## NONDELEGABLE DUTY OF LANDOWNER

The first exception to which the trial court alluded in this case is the nondelegable duty of a landowner to keep his premises reasonably safe for business invitees. Unfortunately, this issue has been largely ignored by the parties. One aspect of this exception is found in § 422 of the Restatement, which provides as follows:

> **§ 422. Work on Buildings and Other Structures on Land**
>
> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure
>
> (a) while the possessor has retained possession of the land during the progress of the work, or
>
> (b) after he has resumed possession of the land upon its completion.

This section was first considered by our courts in cases involving injuries to employees of an independent contractor seeking to recover damages from the employer/landowner for injuries occurring during the course of construction. In *Welker v. Kennecott Copper Co.*, 1 Ariz.App. 395, 403 P.2d 330 (1965), this court construed the term "others" as used in § 422 and other Restatement exceptions to exclude such employees, in part because they were covered by the worker's compensation statutes and to hold otherwise would impose greater liability on the employer than he would have to his own employees, contrary to the intentions of the Restatement. *See also Mason v. Arizona Public Service Co.*, 127 Ariz. 546, 622 P.2d 493 (App.1980); *Parks v. Atkinson, supra.*

In *Koepke v. Carter Hawley Hale Stores, Inc.,* 140 Ariz. 420, 682 P.2d 425 (App.1984), Division One of this court considered a claim under subsection (a) of this section in a case involving a department store customer who was injured as a result of the negligence of an independent contractor doing remodeling and repair work while the store remained open for business. The court found several policy reasons supporting the adoption of the Restatement position and its application to that case. First, the department store received an economic benefit from remaining open while the work was in progress. Second, the department store was able to protect itself financially by obtaining insurance as a cost of doing business and by selecting a financially responsible contractor. Third, the department store could prevent or minimize the risk of injury by hiring a competent contractor and insisting on proper safety precautions. The court rejected the argument that this section in effect made the landowner an insurer of the safety of business invitees, noting that liability would ensue only upon a showing of the contractor's negligence.

■ We are now called upon to decide whether the vicarious liability imposed upon landowners under § 422(b) should be adopted in Arizona.[2] The courts in other jurisdictions adopting § 422(b) have done so generally on grounds similar to those enunciated by Division One in *Koepke, supra,* in adopting § 422(a). *Patton v. Spa Lady, Inc.,* 772 P.2d 1082 (Alaska 1989); *Pappas v. Carson,* 50 Cal.App.3d 261, 123 Cal.Rptr. 343 (1975) (also finding that care in the alteration/repair of premises is a matter of public importance); *see also West End Corp. v. Royals,* 450 So.2d 420 (Miss. 1984) (following § 422(b) without analysis).

In other jurisdictions, the courts have either rejected the Restatement position outright or construed it to avoid vicarious liability. In *Washington Avenue Food Center v. Modlin,* 205 So.2d 295 (Fla.1967), the Florida Supreme Court reversed the court of appeals' adoption of § 422(b) on the basis of its decision in *Mai Kai, Inc. v. Colucci,* 205 So.2d 291 (Fla.1967), where the court concluded that adoption of the Restatement position would result in the arbitrary application of one standard to a businessman who contracts for the construction of a building on his property and another standard to a businessman who purchases a previously constructed building. In *S.S. Kresge Co. v. Port of Longview,* 18 Wash.App. 805, 573 P.2d 1336 (1977), the Washington court rejected the Restatement position, holding that liability would ensue only where the owner had control or the right to control the work of the independent contractor.

The New Jersey Supreme Court has also rejected the concept of strict liability for landowners. In *Brown v. Racquet Club of Bricktown,* 95 N.J. 280, 471 A.2d 25 (1984), the defendant club was sued by two women who were injured when a staircase on its premises collapsed. The club had purchased the building during its construction. Against a dissent arguing that § 422 should be adopted and that such cases should be treated similarly to products liability cases, the court applied a general negligence standard, emphasizing the landowner's duty of inspection.

A proprietor generally is not liable for injuries caused by defects of which he had no actual or implied knowledge or notice, and no reasonable opportunity to discover.... Whether a reasonable opportunity to discover a defect existed will depend on both the character and the duration of the defect.... Thus, proprietors have been absolved of liability where a defective condition was found not to be discoverable by reasonable in-

---

2. In *First National Bank of Arizona v. Otis Elevator Co.,* 2 Ariz.App. 80, 88, 406 P.2d 430, 438 (1965), Division One of this court stated: "The duty which an owner or occupant of property is under to keep the premises in a reasonably safe condition cannot be delegated by him so as to avoid personal responsibility." In light of the court's holding that the owner/bank was itself negligent, we view this statement as meaning that the owner cannot avoid liability for its own negligence. The case involved injuries resulting from the operation of an elevator in the bank's building. The facts of the case, and the court's imposition of a "high degree of care" standard upon the bank, distinguish this case from the present special action.

spection ... or where a latent defect, undiscoverable except by extraordinary investigation, caused an injury shortly after a new owner bought a building. 95 N.J. at 291, 471 A.2d at 30 (citations omitted).

The Oregon Supreme Court has construed § 422(b) as merely encompassing the inspection requirement.

[I]t is our view that § 422(b) is not to be read literally to mean that in every resumption of possession by the employer of a contractor he "is subject to the same liability as though he had retained the work in his own hands." We read the section to mean only that the employer is still under a duty to exercise reasonable care to see that the structure is in a reasonably safe condition, even though he had previously placed an independent contractor in exclusive possession of the premises.... The employer's duty in this regard is stated in Restatement (Second) of Torts § 412 (1965), which requires the employer to subject the work after completion to such an inspection as is reasonable under the circumstances.

*Macomber v. Cox,* 249 Or. 61, 435 P.2d 462, 466–467 n. 8 (1967) (citations omitted).[3]

With the exception of *Macomber,* none of the cited cases focuses on the standard of conduct applied to determine liability. While at first blush it appears that liability may be predicated simply upon a showing that the contractor or his agents or employees were negligent, the section states only that the possessor of land "is subject to the same liability as though he had retained the work in his own hands...." Comment *g* indicates that so long as the contractor has non-negligently fulfilled the landowner's duties, the landowner is not liable even though the work is defective. It reads:

*g.* If the work is substantial, it is often the case that bad workmanship at an early stage of the work is concealed by its subsequent progress. In such a case, inspection after the work is completed is obviously unavailing to discover its dangerously defective character. Where the work is of this character the possessor of land may be under a duty not merely to inspect the work when it is finished but to make such inspections during its progress as a reasonable man would realize to be necessary to ascertain whether it is being so done as to make the building or other condition reasonably safe. This duty, if it exists, cannot be delegated so as to escape responsibility for its inadequate performance.

As we read § 422, for purposes of determining whether a landowner is liable, the contractor's conduct must be analyzed as if he were the landowner to determine whether that conduct fulfilled the landowner's duties to third persons. This would include, for example, the duty to exercise reasonable care to employ competent contractors and the duty to inspect the work of contractors. *See* Restatement (Second) of Torts §§ 411, 412 (1965). Construed in this manner, application of this section will not automatically result in landowner liability upon a finding that the contractor has been negligent. For purposes of determining the landowner's liability, the standard by which the contractor's conduct will be judged is that of the reasonable landowner under like circumstances, *see* Restatement (Second) of Torts § 283 (1965), and not the standard applicable to the contractor himself. Thus, conduct which may result in liability for the contractor because it violates the standard of care applicable to him may not result in liability to the landowner because it is consistent with the latter's duty of care. In other words, conduct which may amount to negligence on the part of the contractor may not equate to negligence on the part of the landowner.

This construction of § 422 avoids the problem noted in *Modlin, supra,* of inconsistent results as between businessmen who build, as opposed to purchasing, a building because in both instances the same standard of care is applied. It also

---

**3.** Oregon has subsequently adopted § 422(a) on grounds similar to those enunciated by Division One in *Koepke, supra. Lipman Wolfe & Co. v.*

*Teeples & Thatcher, Inc.,* 268 Or. 578, 522 P.2d 467 (1974).

results in consistent treatment of landowners who engage the services of a general contractor for construction or repair of premises, who in turn hire subcontractors to perform the work, and those who act as their own "general contractor." Finally, it permits greater uniformity in the application of general principles relating to employers of independent contractors, without regard to the employer's status as a landowner. For the foregoing reasons, we hold that § 422 subjects a landowner to liability only where the conduct of the independent contractor to whom he has entrusted the work on his property amounts to a breach of the landowner's duty to the person thereby injured.

■ In the present case, the landowner (petitioner) engaged the services of a general contractor (Hatfield) for the purpose of constructing the self-storage facility. Hatfield in turn contracted with Glebe Electric to install the electrical wiring and fixtures, and the parties appear to agree that Jula's injuries resulted from Glebe's negligent performance of its responsibilities. The sole basis asserted for petitioner's liability is Jula's claim that petitioner knew or should have known of the defective installation of the electrical system,[4] and the entire focus of the summary judgment pleadings and evidence is on the actual or constructive knowledge of petitioner and petitioner's alleged failure to conduct adequate inspections. However, as discussed above, the critical inquiry is whether Hatfield, standing in petitioner's shoes, knew or should have known of the defective work, whether Hatfield made such inspections as would have been reasonable for petitioner to have made had it retained the work in its own hands, and whether such reasonable inspections would have revealed the existence of the defective work. On these points, neither evidence nor argument was presented, and on this state of the record, we must deny relief.

## INHERENTLY DANGEROUS WORK

■ The trial court also denied summary judgment on the ground that "[a]ny work involving electric wiring is necessarily or inherently dangerous," and therefore the landowner's duty is nondelegable. Happily for this court, this issue has been addressed by the parties and is easily resolved.

The exception to the general rule of employer nonliability where inherently dangerous work is entrusted to an independent contractor is found in § 427 of the Restatement. In order for the exception to apply, "[t]he work itself must be of a character that it involves a risk of harm which cannot be eliminated by the exercise of reasonable care...." *Bible v. First National Bank of Rawlins*, 21 Ariz.App. 54, 57, 515 P.2d 351, 354 (1973). Moreover, resolution of the issue depends upon the particular facts of the case. *Id.*

In the present case, no facts were before the trial court from which it could conclude that electric wiring work is inherently dangerous, and the trial court exceeded its authority in reaching this conclusion, apparently as a matter of law.[5] Absent the other issues in this case, we would direct the entry of summary judgment in favor of petitioner in light of Jula's failure to raise facts in support of this defense to the motion for summary judgment. *Hegel v. O'Malley Ins. Co.*, 122 Ariz. 52, 593 P.2d 275 (1979); *State v. Tucson Title Ins. Co.*, 101 Ariz. 415, 420 P.2d 286 (1966). Given its present posture, we can only vacate that portion of the order denying summary judgment on the ground that the work in question was inherently dangerous and the petitioner's duties were therefore nondele-

---

4. Although Jula relies on her expert's deposition testimony to suggest that the electrical plans may have been deficient, she has not pursued a claim of petitioner's liability based on the architect's negligence.

5. To the contrary, Jula's expert testified at deposition that there was nothing inherently dangerous about wiring the security service panels. However, it appears that this portion of his deposition was not presented to the trial court in support of the motion for summary judgment.

gable. With respect to petitioner's remaining claims, we deny relief.

FERNANDEZ, C.J., and
LIVERMORE, P.J., concur.